## NORMAN L. BECKLEY *vs.* WILLARD I. ALLING.

First Judicial District, Hartford, January Term, 1917.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Strictly speaking, there is no such distinct office as that of "first selectman," the words being used merely to designate the position or rank which one member of a board of selectmen occupies in relation to his fellows, and therefore as indicating the right of such member to perform the duties assigned by law to the occupant of that rank or position.

General Statutes, § 1812, provides that of the persons elected selectmen, the person first named on a plurality of the ballots cast for them or any of them shall be first selectman; while Chapter 263, § 2, of the Public Acts of 1911, as amended by Chapter 262, § 1, of the Public Acts of 1915, authorizes any elector who desires to vote a split ticket for selectmen to indicate his choice for first selectman by placing the figure one (1) instead of a cross-mark (X) in the space at the left of such candidate's name, and an X at the left of the name of the other candidate for selectman for whom he votes, and prescribes that the candidate so designated by the figure one shall be deemed to be first named on such ballot. *Held* that the later

Beckley *v.* Alling.

legislation was enacted to remedy the difficulty experienced in voting with the radically different form of official ballot adopted in 1909, and was simply designed to provide an alternative permissive way of indicating the voter's choice, and not an exclusive substitutionary method for that provided by § 1812 of the General Statutes; and therefore ballots containing no cross-mark in the circle at the head of the party column, but with a cross-mark against the first named candidate for selectmen in the Democratic column, and a like mark against the second named candidate in the Republican column, were properly treated as ballots cast for the Democratic candidate as first selectman, and ballots disclosing the reverse situation were properly treated and counted as cast for the Republican candidate as first selectman.

Under our present system, the ballot as actually cast includes only those names for which the elector votes, and not all those printed upon the paper that goes into the box; and thus the order of precedence from top to bottom of the elector's ballot is, in all ordinary cases, easy to determine.

One of the ballots in the present case bore a cross-mark (X) in the circle at the top of the Republican column, and a like mark to the left of the first-named candidate for selectmen in the Democratic column. *Held* that inasmuch as a vote for the first-named candidate for selectman in the Democratic column excluded the possibility of a vote for the first-named candidate in the Republican column for the same position, the ballot in question was properly counted for the Democrat for first selectman, a result which was in accord with the spirit, at least, of other provisions of § 1 of Chapter 262 of the Public Acts of 1915.

Two ballots, cross-marked in the circle at the head of the party column, indicated that one had been made by a trembling hand and that the other had been made by a slip of the hand or carelessly, having a faint loop or scroll attached to it. *Held* that these two ballots were properly counted for their respective party candidates.

Chapter 250, § 3, of the Public Acts of 1909, provides that any ballot marked in any other than the prescribed manner will be void. *Held* that ballots which contained additional marks, or slits in the paper, contravened the statute and should not have been counted; and that if the law was to be made effective it would not do to leave such ballots to the discretion of the election officials and permit them to disregard distinguishing marks, which in their judgment were susceptible of a plausible explanation consistent with good faith on the part of the voter.

A petitioner who alleges that he received a plurality of the votes cast and prays for an election certificate accordingly, must fail if it appears upon the hearing that the result of the voting was a tie.

Argued January 4th—decided February 21st, 1917.

PETITION alleging that the plaintiff had been elected first selectman of the town of Berlin on October 2d, 1916, but had not been so declared, and praying for a recount of the ballots cast at said election and a judicial declaration of his election, brought to and heard by the *Hon. Joseph P. Tuttle*, a judge of the Superior Court; facts found and judgment rendered for the plaintiff, and appeal by the defendant. *Error and judgment set aside.*

*Warren B. Johnson*, for the appellant (defendant).

*Noble E. Pierce*, for the appellee (plaintiff).

PRENTICE, C. J.   At the annual town election held in the town of Berlin on the first Monday of October, 1916, there were deposited in the ballot-box six hundred pieces of paper purporting to be ballots for town officers, including selectmen. Each voter was entitled to vote for two candidates for the latter office. The Republican nominees, appearing in the first column on the official ballot, were Willard I. Alling, standing first, and George B. Carter second. The Democratic nominees, occupying the second column, were Norman L. Beckley, standing first, and John T. Molumphy second. Of the six hundred pretended ballots cast, twenty-nine were by the agreement of counsel upon the hearing below held illegal and not counted. Five others were rejected by *Judge Tuttle*, and no question as to the propriety of their rejection is now made. Of the remaining pretended ballots, as it was ruled and is agreed, two hundred and seventy-two were lawfully cast for Alling as selectman and the selectman first named of the two voted for thereon, and two hundred and fifty-nine similarly cast for Beckley. The remaining thirty-five, of which twenty-five were counted for Beckley as first

selectman and ten for Alling, present questions for our consideration.

Twenty-eight of this number present precisely the same features, and the same question. On twenty of them a cross-mark (X) appears before Beckley's name in the Democratic column and another before the name of Carter in the Republican column. On the remaining eight, the reverse situation appears, that is, a cross-mark is placed before the name of Alling in the Republican column and one before the name of Molumphy in the Democratic column. Upon no one of them is there a cross-mark in the circle at the head of the party columns.

The questions concerning these ballots arise out of the somewhat anomalous character of the position commonly known as first selectman, and out of two statutory provisions, to wit: § 1812 of the General Statutes, that "of the persons elected selectmen by any town, the person first named on a plurality of the ballots cast for them or any of them shall be first selectman," and of that portion of § 1 of Chapter 262 of the Public Acts of 1915, p. 2087, which concerns the voting of split tickets for selectmen. This latter provision reads as follows: "Any elector who wishes to vote a split ticket for selectmen may indicate his choice by placing the figure '1' instead of a cross-mark 'X' in the voting space at the left of such candidate's name, and a cross-mark 'X' in the voting space at the left of the name of the other candidate for selectman for whom he votes, and the candidate so designated by the figure '1' shall be deemed to be the first named on such ballot."

The claim made on behalf of Alling is that the provision last quoted is exclusive, and provides the only method for voting for candidates for selectmen, whose names appear in different party columns, in which the voter's choice of one of them for the first position on the

board can be made effective. The contention on Beckley's part is that the method of voting by the use of the figure "1," as provided in the Act of 1915, is not exclusive, but permissive, and that it was designed simply to supplement the method indicated in § 1812 of the General Statutes, which proved to be not workable under certain conditions where the newly adopted and now existing form of ballot was used.

It is well established that there is no such distinct office, properly speaking, as that of first selectman. That familiar title of long standing is not used as descriptive of an independent officer, but rather to indicate the position or rank which one member of a board of selectmen occupies in relation to his fellow members, and as indicating his right to perform certain duties assigned by law to the person who occupies that position or rank. *Buck* v. *Barnes*, 75 Conn. 460, 464, 53 Atl. 1012. For a long period, and without statutory recognition, one of the board, by virtue of his having been named first upon the successful ticket, was regarded as its head and called first selectman. In 1860 he was first referred to by that name in a statute which authorized him to act *ex officio* as town agent in the absence of other special appointment. Later still, in 1874, what appears now as § 1812 of the General Statutes was enacted by legislation first appearing in the Revision of 1875. *Buck* v. *Barnes*, 75 Conn. 460, 463, 464, 53 Atl. 1012; Public Acts of 1860, p. 11, Chap. 14; Rev. 1875, p. 24, § 2.

As long as the mode of voting by the use of party tickets or tickets bearing only the names voted for continued, this legislation furnished a simple and sufficient method for the designation of the persons who should hold the first rank among their fellow selectmen and perform the duties confided to such persons. When, however, in 1909 the radical change was made to the

use by all voters of a single official ballot bearing the names of the candidates of all parties printed in parallel columns, it soon developed that the existing provision for the designation of the chosen candidate who should hold the first rank by reference to the relative positions that his and other names occupied upon the ballots, was not a satisfactory one, in that conditions might arise in which the voter would find difficulties in the way of an attempt to express his will. For instance, if the voter wished to vote for two persons for selectmen, and they were candidates of different parties, each occupying the leading place on his party ticket, the situation would present a puzzle to discover a way to do so too difficult for solution by the average man if he wished to vote for one of them for the first position upon the chosen board.

Considerations of this character doubtless led to the incorporation into the law by the next General Assembly of a provision, still retained, to enable a voter to indicate the candidate of his choice for the first position on his ballot in some way other than by its mere location thereon. Public Acts of 1911, Chap. 263, § 2; id. 1915, Chap. 262, § 1. The existing difficulty was solved by permitting the voter to place the figure "1" in the voting space before the name of the candidate of his choice for the first place, and a cross-mark before the name of the other candidate or candidates for whom he wished to vote as a member or members of the board. While this was done the provision of § 1812 of the General Statutes was unrepealed and unchanged, and has since remained so. Not only that, but the amendment made in 1911, and re-enacted in 1915, recognizes priority of position on the ballot as the controlling fact to be ascertained when it provides that the special marking by the use of the figure "1" should be deemed to indicate the occupancy of the first position on the ballot.

The amendment of 1911 clearly appears to have been enacted to meet an existing evil. Its language is couched in the permissive form calculated to remedy that evil. Its general tenor is such that the intention not to disturb the existing general situation is apparent. To hold that it forbids the choice of the person to act as first selectman in a manner conformable to that prevailing as to all other candidates, would be to introduce unfortunate and needless complications into the ballot system. We are satisfied that it was simply designed to provide an alternative permissive method of indicating a voter's choice, and not an exclusive substitutionary one.

*Judge Tuttle* acted in conformity with this conclusion when he held that these twenty-eight ballots were valid ones, and counted twenty of them as cast for Beckley as first selectman by virtue of his name being first thereon, and in counting eight of them for Alling for the first place for like reason. As we held in *Mallett* v. *Plumb*, 60 Conn. 352, 363, 22 Atl. 772, § 1812 of the General Statutes, in that part of it which uses the words "first named upon the ballot cast," means the first named upon the ballot as actually cast. The ballot as actually cast under the present system includes only those names for which the voter casts his ballot, and not all names printed upon the paper that goes into the box. Excluding consideration of the names rejected by the voter, and taking into account only those for whom he casts his vote, the order of precedence, reading from the top to the bottom of his ballot, is in all ordinary cases easy to determine and definitely determinable. The name highest in position is the one first named. That means Beckley upon the twenty and Alling upon the eight.

Another ballot is somewhat closely related to those just considered, but differs from them in that it bears an

"X" in the circle over the Republican column and an "X" before Beckley's name in the Democratic column. Holding, as we do, that Alling and Beckley were so far opposing candidates, although not strictly speaking for an independent office, that a vote for one of them for the first position excluded the possibility of a vote in favor of the other for that position, and that such vote necessarily excluded a vote for one of the persons named upon the opposing ticket, we are of the opinion that *Judge Tuttle* did not err in ruling that this ballot should be counted as one for Beckley as first selectman, and not one for Alling for that position, or, for that matter, for a position on the board. That portion of the Act which provides that "in any case where an elector has made a cross-mark 'X' in the circle at the head of any party column, and has also made a cross-mark 'X' in a voting space at the left of the name of any candidate in any column on the ballot, such ballot shall be counted for the candidate opposite whose name such cross-mark 'X' shall have been placed, and for all the candidates in the party column at the head of which a cross-mark 'X' has been placed, except any candidate for an office for which the name of a candidate has been marked in another column," covers the situation at least in spirit. Public Acts of 1915, Chap. 262, § 1, p. 2087.

Two ballots, one cast in favor of each of the candidates, present the same general features and were properly counted by *Judge Tuttle*. In the case of one, the circle at the head of the party column contains a cross-mark giving indication, as the finding says, of having been made by a trembling hand. In the other the cross-mark in the circle has a faint loop or scroll attached to it, apparently made by a slip of the hand or carelessly.

Three ballots, two counted for Beckley and one for Alling, are alike in that they bear, in the language of the

finding, an additional mark or slit in the paper. The statute provides that any ballot marked in any manner other than as provided will be void. Public Acts of 1909, Chap. 250, § 3. It also provides that the stub attached to the ballot shall have printed upon it instructions to the voter of like purport, and, specifically that any other mark than the cross-mark "X" used for the purpose of voting, or the figure "1" used for the purpose of designating choice of first selectman, will render the ballot void. It also directs that the ballot blank given to the voter be returned to the election officials and another obtained, if it be torn, defaced, or wrongly marked. Public Acts of 1911, Chap. 263, § 2. Each of these three ballots, according to the finding, contained, in addition to the required marking, a mark in the form of a slit in the paper or otherwise.

Whether in the form of a slit or other distinguishing feature, we are of the opinion that the ballots were invalidated thereby, and that under the law as it now is they should not have been counted. If the law is to be effective, it will not do to say that the presence of a distinguishing mark, whether it be a slit or other mark, may be disregarded, if its presence is susceptible of a plausible explanation consistent with good faith on the part of the voter, and that election officers are endowed with discretion in the matter of determination whether or not such explanation can be made and the ballot counted or disallowed accordingly. Any law governing the reception of ballots, to be safe and fair in its operation, must be clear and precise in its provision of standards, and leave as little as possible open to the exercise of discretion and personal judgment on the part of election officers. This is the apparent purpose of our present statutes. In *Phelan* v. *Walsh*, 62 Conn. 260, 280, 297, 25 Atl. 1, a case arising under a former less definite law, a similar ballot was rejected.

The remaining ballot bore, in addition to the cross-mark in the circle over the Democratic column, a curved or angular mark near the right-hand edge of the ballot. For reasons already stated, this was a marked ballot, and there was error in counting it.

The exclusion of the four ballots last considered, from the count as made by *Judge Tuttle*, changes the result he arrived at from that of two hundred and eighty-four ballots for Beckley as first selectman and two hundred and eighty-two for Alling, to one of two hundred and eighty-one ballots for each candidate, with the result that the petitioner did not receive a plurality of ballots bearing his name in the first place upon the ballots as cast, and was not elected first selectman.

There is error, the judgment is set aside and the cause remanded to *Judge Tuttle* for the rendition of judgment denying the prayer of the petitioner that he be declared to have been elected first selectman of said town of Berlin at said election, and that a certificate of such election be issued.

In this opinion the other judges concurred.