Meigs v. Theis.

## CLARKSON H. MEIGS vs. CLINTON A. THEIS.

* First Judicial District, Hartford, May Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Section 282 of the General Statutes provides in part that "any person claiming to have been elected selectman of any town may bring his petition to any judge of the Superior Court alleging the facts on which such claim is founded, and such judge shall thereupon hear and determine said petition and his decision thereon shall be final and if in favor of the petitioner, his certificate to that effect under the seal of the court, shall entitle the petitioner to hold and exercise the duties and powers of such office." *Held* that there was no merit to the defendant's claim that this statute, as applied to the constitutional office of selectman, was void as an unreasonable restriction of the right of trial by jury.

The position of first selectman as established by § 271 of the General Statutes is an elective office so that one entitled thereto may enforce his right under the provisions of § 282, which apply to "any person claiming to have been elected selectman . . . of any town . . . or to any other town office."

If the trial judge, acting upon a petition for a recount of votes under § 282 of the General Statutes, orders the ballot-boxes opened and the ballots counted, the only questions thereafter reviewable in this court relate to the correctness of the count; all interlocutory rulings, including the correctness of the order to make the recount, become unimportant.

When the ballot-boxes are once opened for any purpose (as, in the present case, to find out whether the moderator's certificate was placed therein instead of being filed in accordance with law) it would be absurd for the trial judge not to proceed with a count of the ballots.

The remedy provided by § 282 of the General Statutes affords a simple and expeditious method of determining a contested election in place of the expensive, cumbrous and inadequate procedure of *quo warranto*.

A certificate of election, issued by the trial judge, does not remove the defendant from, nor put the plaintiff into, office; some further proceeding, in which the certificate is conclusive, is necessary to accomplish that result.

In voting a split ticket for selectmen, an elector may, under § 598 of the General Statutes, indicate his choice for first selectman by placing the figure one (1) opposite the name of the desired

* Transferred from third judicial district.

candidate, but he is not bound to do so; therefore the trial court, in determining who was first named upon a plurality of the votes cast for selectmen, properly counted in plaintiff's favor certain split ballots upon which only the usual cross-mark (X) appeared opposite his name.

Argued May 8th—decided June 11th, 1925.

PETITION for a recount of the ballots cast at the annual election in the town of Madison in October, 1924, and for the issuance of a certificate to the plaintiff as first selectman of said town, brought to and heard by the *Hon. Allyn L. Brown,* a judge of the Superior Court; judgment for plaintiff, and appeal by defendant. *No error.*

*Ernest L. Averill,* for the appellant (defendant).

*Philip Pond,* with whom was *Arthur W. Marsden,* and, on the brief, *Robert H. Alcorn* for the appellee (plaintiff).

KEELER, J. At the annual town meeting of the town of Madison for the election of town officers, there were three sets of candidates for the various offices to be filled, appearing upon the official ballot in three columns under the designation of "Republican," "Democrat," and "Independent Republican"; position for the latter had been obtained by petition pursuant to statute. The usual blank column was added to the ballot, making four columns in all upon it. The candidates for selectmen, appearing in the order named in the Republican column, were Clarkson H. Meigs and Austin Ackerman; Walter E. Clark and Joseph Schmidt appeared in like order in the Democratic column, and Clinton A. Theis and Vincent Stevens appeared in like order in the Independent Republican column. The moderator of the meeting declared that Meigs, Theis and Clark had been elected selectmen, and Theis had been elected first selectman.

On October 14th, 1924, Meigs brought his petition to *Judge Brown,* alleging that at the town meeting in Madison above referred to, he was candidate upon the Republican ticket for the office of first selectman; that the total number of ballots cast, as announced by the election officers, was 790, of which twelve were rejected by the election officials. The petition proceeds further to allege as follows:

"3. The counters of the ballots at said election announced that your petitioner had received three hundred and eighty-four votes, the largest number of votes cast for any candidate for selectman, and one Clinton A. Theis had received three hundred and eighty votes, and it was claimed by said committee [counters] and the election officials, however, that said Clinton A. Theis had the larger number of votes for first selectman, notwithstanding the fact that your petitioner was named first upon the ticket of the Republican party and the said Clinton A. Theis was named first for selectman upon the ticket of the Independent Republican party and organization, and said election officials announced that said Theis received three hundred and eighty votes for selectman.

"4. Said counters and the moderator at said election announced that your petitioner for selectman received three hundred and eighty-four votes, that Walter E. Clark, named first upon the ticket of the Democratic party for selectman, had twenty-five votes, and said Theis, named first as aforesaid on ticket of said Independent Republican party, had three hundred and eighty votes, being a total of seven hundred and eighty-nine votes, and being a larger number than the total number of votes cast less the ballots rejected.

"5. Of the twelve ballots rejected, as aforesaid, at least nine thereof were improperly and unlawfully rejected, which said ballots so rejected were cast for your

petitioner for the office of first selectman, and your petitioner by a plurality of the votes cast by the electors of the town of Madison at said town meeting was elected first selectman of said town.

"6. Notwithstanding the foregoing, the moderator of said town meeting declared the said Clinton A. Theis elected first selectman of said town and the said Theis is undertaking to perform the duties of said office.

"7. No return as by statute provided has been made by the counters and the moderator at said election to the town clerk of the number of ballots cast for each candidate for said office, or of the person elected thereto.

"8. The registrars acting at said election did not, as by statute required, on the following day file with the town clerk a certificate showing the whole number of names registered, the number checked as voting, and the number not checked thereon."

The petitioner prayed that the foregoing facts be inquired into pursuant to the provisions of the statute, and that the ballot-box used at the election be opened, and the ballots be recounted, and that the results of the election be determined and certified. Upon this the judge made an order to show cause, returnable October 28th, 1924, of which, together with the petition, service was made and return thereof made to the judge. Upon the return day the respondent filed a demurrer, in the first six paragraphs of which he attacks the petition for indefiniteness of statement and lack of allegation of such mistakes on the part of the election officers as would justify the opening of the ballot-box and a recount of the ballots found therein. As further grounds of demurrer it is alleged (7) that General Statutes, § 282, does not entitle a person elected selectman to seek to establish his title to the office of first select-

man; (8) that there is no office of first selectman as distinguished from that of selectman; (9) that the office of selectman is created by the Constitution and as to such office the statutory remedy invoked is unconstitutional as depriving a respondent of the right to a jury trial; (10) that a judge of the Superior Court has no right to count the ballots cast, but only to pass upon the facts alleged in the petition upon which petitioner's claim to election is founded. This demurrer was overruled by the judge, and afterward the parties were at issue on the complaint and respondent's answer putting in issue the greater part of the allegations of the petition.

The judge ordered the box opened and the ballots counted, and heard evidence pertaining to the case, and by his decision found the issues for the petitioner, and granted a certificate of election to him as first selectman. In addition to the introductory facts given above, which were undisputed, the judge also found that for all other offices affected by the provision for minority representation, the moderator declared persons named on the Democratic ticket elected, although only twenty-five Democratic tickets, straight and scratched, were cast. No duplicate certificates, as provided by General Statutes, §§605, 606, signed by the counters, were made up and delivered to the moderator, giving the number of ballots found in the box, the number of ballots rejected for any cause, and the number of ballots counted for each candidate respectively. No return was filed with the town clerk by the registrars on the day following the election, as required by statute, showing the whole number of names registered, the number checked as voting, and the number not checked. On October 14th, 1924, the moderator signed a certificate, which was filed with the town clerk, which contained a statement of the persons elected selectmen

and first selectman, but not stating the number of votes received by each. At the conclusion of the count a pencil memorandum made upon a sample ballot was handed by the moderator to the town clerk, purporting to state the number of votes received by each of the candidates at the election for their respective offices as determined by the counters, which memorandum the town clerk, at the request of the moderator, read at the town meeting. This memorandum was unsigned and uncertified, and it was claimed contained a true statement of the number of votes cast for each candidate at the election for the respective offices, but in fact the memorandum did not contain a true statement of the number of votes cast for the respective candidates at the election. The statement of the vote was read by the town clerk in open meeting and showed, among other things, the following figures:

Total number of votes cast............ 790
Rejected by moderator............... 12

For selectmen:
    Clarkson H. Meigs................ 384
    Austin Ackerman ................. 367
    Walter E. Clark.................... 25
    Joseph Schmidt................... 22
    Clinton A. Theis.................. 380
    Vincent Stevens.................. 374

No figures of any kind were given in the memorandum or otherwise at the meeting as to the number of votes cast for first selectman for any person, but the moderator made the declarations as to persons elected as above given. No certificate of any kind was placed in the ballot-box, nor made to the town clerk, except as hereinbefore stated, although it was the belief of several persons, certain of whom testified in the hear-

ing upon the petition, that a certificate, duly executed by the counters and moderators, had been placed in the box. Upon the opening of the box and its examination with reference to the obtaining of such certificate, it was found that there was nothing else than the ballots that had been cast and the tally sheets used by the counters, one of which sheets was signed by the counters and the moderator, but not certified.

The reason for the rejection of the twelve ballots by the counters and moderator was not made clear, although various recollections as to the reason for the rejection of each ballot were given. It did appear that certain of the ballots so rejected, and probably a majority of them, were cast for the petitioner, and for him for the position of first selectman. The petitioner had more votes for selectman, according to the announcement of the moderator, than the respondent, and no return or record was made by anybody of the number of votes cast for either the petitioner or the respondent for the position of first selectman.

The ballot-box was ordered opened by the court and a recount of the ballots was made by a committee appointed by the court, which recount showed the following results:

| | |
|---|---:|
| Total vote cast | 790 |
| Rejected by the moderator, sustained by the court | 11 |
| Rejected by moderator and counted by the court | 1 |
| Additional rejections by court | 3 |

For selectmen as between petitioner and respondent:

| | |
|---|---:|
| Meigs | 376 |
| Theis | 373 |

First selectman:

| | |
|---|---|
| Meigs .......................... | 376 |
| Theis .......................... | 370 |

The additional rejections by the court referred to above did not affect this result.

The petitioner was elected selectman and first selectman, having received the greater number of lawful ballots cast at said election.

The memorandum of decision was made a part of the finding. The respondent made numerous requests for corrections, many of which were granted. The disposition of the corrections refused were justified by the record, and there does not appear in any of them matter which, if added or stricken out, as the case may be, would materially affect the presentation of appellant's case upon the record before this court.

The court reached the following conclusions:

1. No lawful certification of the results of the election was made and particularly with reference to the result of the election as it related to the position of first selectman.

2. The counters and the moderator at the election, wilfully or otherwise, were mistaken in their count and in the consequent announcement by the moderator of the result of the election.

3. The petitioner was lawfully elected first selectman of the town of Madison and certificate to that effect should issue.

Respondent, as reasons of appeal, assigns error in the overruling of the demurrer; also that, upon the evidence, there was no adequate reason to open the ballot-box, and the judge acted without authority of law; that the office of first selectman is not an elective office and the judge had no authority in law to act under the statute to determine who should occupy said

Meigs *v.* Theis.

position; that the statute under which the petition was brought is unconstitutional, in that the title to the office of selectman, being a constitutional office, cannot be determined thereunder, the statute violating the constitutional guarantee of the right to trial by jury; that to designate a candidate for selectman as the first named on the ticket cast, the voter must place the figure "1" at the left of his choice for that position if he also chooses to split his ticket.

The question of the constitutionality of the statute is involved in the demurrer, as well as some other points specifically set forth as above, so that the claims of error pressed by respondent are: (1) the ballot-box should not have been opened; (2) the split ballots were unlawfully counted; (3) the statute above referred to is unconstitutional. So far as the demurrer is concerned with the legality of opening the ballot-box by reason of an insufficiency of allegation, and so far as such facts found by the court which were developed in testimony prior to the opening of the box are concerned, we have held that such matters are not ordinarily to be made subjects of review. The facts disclosed by the testimony of the ballot-box itself, in connection with other relevant evidence, are the controlling factors in the situation. In *Donovan* v. *Davis,* 85 Conn. 394, 399, 82 Atl. 1025, we said: "If the judge orders the boxes opened when a prima facie case has not been made out, or commits some other irregularity preceding the opening of the boxes, his order or ruling though erroneous, cannot ordinarily be reviewed; for when once the ballot-boxes are opened and the ballots counted, the legality of the result depends upon the count of the ballots, and all interlocutory questions become unimportant. If the count shows that *A* was elected instead of *B*, the only issue of moment is whether the count is correct. If it is, the decision

must follow the count and the certificate issue, for public policy could not tolerate the setting one side of a lawful result because of some erroneous ruling of the judge prior to the opening of the box." See also *Conaty* v. *Gardner*, 75 Conn. 48, 52, 52 Atl. 416.

We do not think, however, upon the facts as they appeared to the judge prior to his order to open the box, that his action was erroneous. The moderator's certificate required by law had not been filed. Had it been available it is quite possible that the questions raised by the petition might have been litigated without opening the box, since it was currently believed, and some persons testified, that the certificate had been placed in the box. If the judge believed that this was probable, then, in connection with some of the facts also appearing in the transaction, he was justified in ordering the box opened. It was opened, and the certificate was not found therein. But the ballots were there, which, when counted, would disclose the facts upon which the certificate, if made, would have been predicated. Not to have counted them, and not to have acted upon the result of the count, would have been absurd.

Passing to the claim that General Statutes, § 282, is unconstitutional, we find that this statute provides that "any person claiming to have been elected selectman . . . of any town, . . . or to any other town . . . office," but not so declared, "may, within sixty days after the time of holding the election, bring his petition to any judge of the Superior Court, alleging the facts on which such claim is founded . . . and such judge shall thereupon hear and determine said petition, and his decision thereon shall be conclusive, and if in favor of the petitioner, his certificate to that effect, under the seal of the court, shall entitle the petitioner to hold and exercise the duties and powers

of such office." The statute provides for an appeal
such as has been taken in the instant case. As a pre-
liminary question, and in accordance with one of his
reasons of appeal, the respondent claims that the office
of first selectman is not an elective office. If this be so,
then neither the respondent nor the petitioner comes
within the provision of the statute, part of which is
above quoted, since it is only under the designation
"any other town office" that they can be compre-
hended. Our statute, General Statutes, § 271, pro-
vides that out of the persons elected selectmen, "the
person first named on the plurality cast for them or
any of them shall be first selectman." It is the con-
tention of the respondent that as no such office ap-
pears printed on the ballots, that it is a derivative
office, conditioned upon the person first being chosen
selectman.

The position of first selectman, which in an informal
way had long before existed, and had been by statute
clothed with certain duties, was in 1874, by a Public
Act, definitely established an office. In *Brown* v.
*Blake,* 46 Conn. 549, 551, we held that this Act created
an office. In its opinion the court says: "But in *State
ex rel. Hull* v. *Hillard,* 42 Conn. 168, it was in effect
decided that there must be a distinct creation of the
office before it could receive judicial recognition. It
resulted that there was a place with which went duties,
powers, and the right to emolument, true *insignia* of
an office, lying beyond the reach of the judicial arm.
There remained therefore a reason for further legisla-
tive action for the formal creation of the office, thus
compelling all claimants to come into the judicial
forum and abide the judgment of a court. We think
this has been done, and, for the reason suggested, by
the statute of 1875 above cited. We are shut up to
this conclusion unless we impute to the legislature the

intention to do no more than to give a name empty of meaning or power."

The case last cited was a petition under the same law invoked in the instant case, and was concerned with the title to the office of first selectman. This was also the case in *Mallett* v. *Plumb*, 60 Conn. 352, 22 Atl. 772, and *Beckley* v. *Alling*, 91 Conn. 362, 99 Atl. 1034.

The statements in the opinions in *Buck* v. *Barnes*, 75 Conn. 460, 53 Atl. 1012, and *Beckley* v. *Alling*, *supra*, to the effect that as a matter of classification the position of first selectman is not, strictly speaking, an elective office, does not detract from the authority of *Brown* v. *Blake, supra*, as above quoted, and in *Buck* v. *Barnes* it is expressly held, after a full consideration of *Brown* v. *Blake*, that the form of proceeding used was proper for the determination of the right of a person to the position of first selectman. Such has been our uniform holding, as appears from all of the cases above cited.

It is claimed, however, that in the cases just considered, the constitutional question was not raised. We held in *State ex rel. Andrew* v. *Lewis*, 51 Conn. 113, that the law in question was constitutional. The office in question was that of mayor of the city of New Haven, and the court in its opinion says (p. 125): "the statute does not interfere in any manner with the rights and remedies of any claimant to any office recognized by the Constitution. How the case would be if it did, it is unnecessary now to consider."

Upon the qualification just quoted, the respondent builds his case, arguing that the determination of the choice of a person as first selectman may involve the question of who were in any case elected selectmen, and that the office of selectman is a constitutional one. We might end the matter here and say that the

position of first selectman is not a constitutional office, and that the case last cited governs the situation, especially since there is, in the instant case, no question as to who were elected selectmen. We think, however, that respondent's claim should receive consideration. He further proceeds to elaborate it by claiming that, as to the office of selectman, there is a right of trial by jury, which is not conferred in the Act which we are examining; also that the Act is exclusive of all other remedies, hence resort can no longer be had to a proceeding of *quo warranto,* a remedy existing at the time of the adoption of the Constitution, and one in which the issues of fact were tried by a jury, and that the right of trial by jury as it existed at the time when the Constitution went into effect is protected by the provision in that instrument that "the right of trial by jury shall remain inviolate."

It was held in the case last cited, which was an information in the nature of *quo warranto,* that a certificate, which had previously been granted upon a petition under the Act which we are now considering, was conclusive, and that the information would not lie, that is, that the remedy by petition was exclusive. But in the quotation which we have made, the court expressly leaves open the question as to a constitutional office. Respondent's brief quotes the provision of the Compilation of 1808, p. 35, § 8, showing the then existing provision as to trial by jury, and presumably in force in 1918, that "all actions that shall be tried before the Superior or County Courts, when issue is joined on any matter of fact, shall be tried by a jury." This obviously relates only to actions at law, since then, as now—subject to statutory provision— issues of fact in suits in equity were tried to the court. Facts determined in such suits were then, as now, available by way of *res adjudicata* or estoppel in sub-

sequent actions at law. It remains, therefore, to determine whether, under the Act under consideration, the new remedy created thereby constituted a modification of existing remedies, so vital as to unduly limit and violate the right of trial by jury. The authorities hold, almost without exception, that a statutory proceeding to determine the results of a contested election need not give the parties thereto the constitutional right of trial by jury. In the leading case of *Ewing* v. *Filley,* 43 Pa. St. 384, 390, the court says: "It is not in the act of organization of the state, nor in the perpetuation of its organic succession, but in the administration of rights under the organization, that the Constitution secures the right of trial by jury. The jury is the popular element in the determination of rights which need enforcement by means of the State organization; but there is a much larger popular element in our elections, the votes of all the people, and all our political practice shows that we have not considered a jury an essential means of deciding contested elections of public officers. We see nothing but inexpediency to prevent the legislature from declaring that the process of election should end with the general return, and that that should be conclusive evidence of title to office or commission. But they have wisely chosen not to do so, and have appointed the court to finish the process, if the general return be contested, by a proper review of the work of the election officers. And, as they have not required that the court should have the aid of a jury for this part of the process, any more than for any previous part, no such aid can be demanded of right by either party, nor is it allowable."

In *Kennard* v. *Louisiana ex rel. Morgan,* 92 U. S. 480, 483, on appeal from the Supreme Court of Louisiana, the court held that a provision excluding a jury

Meigs *v.* Theis.

trial in an election appeal did not violate the terms of the Fourteenth Amendment to the Federal Constitution as depriving a party thereto of due process of law. The office in controversy was that of justice of the Supreme Court, a constitutional office. Leading cases are *Williamson* v. *Lane,* 52 Tex. 335; *Moulton* v. *Reid,* 54 Ala. 320; *Shields* v. *McMahan,* 112 Tenn. 1, 81 S.W. 597; *Pedigo* v. *Grimes,* 113 Ind. 148, 13 N.E. 700. In the note to *Taylor* v. *Carr,* 28 Ann. Cas. 155, 163 (125 Tenn. 235, 141 S.W. 745), there are numerous citations and excerpts supporting the doctrine under consideration.

In Illinois a series of decisions construing a statute similar to our own relies upon the fact that an election appeal is purely statutory and not a cause in law or equity, and in no way comes within the purview of the constitutional protection of the right of trial by jury. *Douglas* v. *Hutchinson,* 183 Ill. 323, 55 N.E. 628. See also McCrary on Elections (3d Ed.) §§ 356, 357, and Paine on Elections, §§ 794, 795, 796, where the doctrine that a statutory method of revising the action of election officers not providing for trial of issues of fact by jury does not contravene constitutional provisions that the right of trial by jury shall be held inviolate.

Statutes similar to that under review providing for a recount of votes result in their action in a certificate of election; they do not put the contestor into the office nor remove the contestee. The former must actually gain possession of the office by some further proceeding. The contest is not one for the possession of an office, it is to determine the result of an election, its legality and fairness. The proceeding is brought before a judge, not before the court. It might perhaps be said to be only *quasi* judicial. In meeting the multifarious questions likely to arise during a re-

count, there may and do emerge many questions hardly within the range of ordinary judicial cognizance.

The General Assembly has power to provide by law regarding the conduct of elections. Such conduct is an administrative exercise of a political power. It may, as in many other cases arising under various laws, become necessary for the persons exercising the power to find contested facts and to apply the law thereto. Yet decisions so made may be final. We have held that such may be the case with regard to the officers conducting an election. *Selleck* v. *Common Council of South Norwalk,* 40 Conn. 359. In some cases proceedings in review may be taken to some official, as for instance, a judge or to a court, and the decision of this reviewing tribunal may be made final and conclusive and not subject to a further appeal to the Supreme Court. *Brown* v. *Cray,* 88 Conn. 141, 147, 89 Atl. 1123. These considerations clearly establish that the method of revision provided, whether by petition or by direct appeal, is not an ordinary civil action. It is analogous to many other special proceedings known to our law; to proceedings for condemnation of land, appeals from the action of boards of relief, and others which might be named, in all of which serious questions of fact might be contested; yet in such matters there has never been any question as to the right of the tribunal provided to try issues of fact without a jury. Respondent grounds his claim as to the violation of the right of trial by jury by the statute under consideration upon the provisions in the Compilation of 1808, as evidencing the law existing at the time of the adoption of the Constitution, quoted in an earlier part of this opinion. But the provision relied upon is concerned with actions tried in the Superior and County Courts. The pro-

ceeding in question is not a civil action, and trial is not had in any court. We now come to the question of denial of the right of trial by jury by reason of the conclusiveness of the certificate of election given by the judge as affecting the issues in an information of *quo warranto,* since it is only from that point of view that the claim of the respondent can have any validity. This leads to some mention of the function of a *quo warranto* proceeding. This remedy is regulated by statute (General Statutes, § 6062) and provides a remedy where any person or corporation "shall usurp the exercise of any office, franchise or jurisdiction." An information may be filed by the State's Attorney or, by his permission, by a citizen upon the relation of the State's Attorney. The court proceeds to judgment "according to the course of the common law."

It will be noted that the statute contemplates an usurpation of an office, as is often said, intrusion into an office. Its object is to put an intruder out, and its judgment does not award the office to the relator. *State ex rel. Oakey* v. *Fowler,* 66 Conn. 294, 301, 32 Atl. 162, 33 *id.* 1005; *State ex rel. Eberle* v. *Clark,* 87 Conn. 537, 541, 89 Atl. 172. If the intruder declines to vacate, further proceedings, usually by way of mandamus, are necessary to induct the lawful claimant into office. It is familiar law that an information of *quo warranto* is not a matter of right. It is not always granted to a would-be relator. The passage of laws providing simple election petitions leading to a quick decision of the results of a disputed election, has been almost universal in the States of the Union. The reason was evidently the cumbrous and uncertain action of a *quo warranto.* This writ only acted upon a person in office, an alleged usurper. If there was a disputed election, unless someone should come forward and usurp, the whole matter was up in mid-air.

While the judgment determined that the respondent was not elected, it did not always determine that the relator was elected. He might occupy the office only to have his own occupancy claimed to be an usurpation, and another proceeding commenced against him. The action could only be brought in a court and await its trial in order, and not disposed of in a summary way by a judge or other special tribunal. Every delay incident to ordinary legal procedure might intervene. Election contests are ordinarily replete with a large number of issues of fact which a judge might decide after a few minutes' consideration, but when tried to a jury would consume much time. In the days before the adoption of the Constitution in Connecticut, elections were simple affairs. Ballots were not required by law in town elections until long after the adoption of the Constitution. The electors of that time voted in such manner as they by their own resolution provided. The electors probably stood up and were counted; they "divided the house". If ballots were used, they were of the simplest kind, an open ballot; and there was no minority representation. Any form of contest of the result of such a simple election would suffice. But with the increasing complexity of our ballot machinery and the growth in the number of voters, this State as well as others was driven to the employment of some method affording a simple and expeditious determination of the results of an election where a contest might arise, and legislation resulted in the methods now employed. These methods, as we have seen, were held constitutional as regards all offices not constitutional, and as to the latter the question was left open, in *State ex rel. Andrew* v. *Lewis*, 51 Conn. 113. We think that much of the reasoning in the opinion in that case applies as well to a constitutional office, as to an office which is not of

that character. Further, it is to be observed that, in its statutes regarding elections, the General Assembly provides by way of elections a mode of expressing determinations and exercising powers on the part of the whole electorate, the instrument of the sovereignty of the people, and as incidental thereto proceedings to secure the revision of any errors occurring in the elective process. The State as such needs no protection in the way of keeping inviolate the right of trial by jury; in the exercise of its legislative power over legal procedure, the State can provide for trials of questions of fact either with or without a jury in any given case, always saving to its citizens the constitutional right to jury trial in cases covered by the constitutional guarantee. As is observed in the case last referred to, an information in the nature of *quo warranto* has the State for plaintiff, and this case suggests that by creating a tribunal proceeding without a jury, it may by legislation waive its right to a jury as plaintiff. This is also held in cases in other jurisdictions. We see no reason why this right may not be waived in the case of constitutional offices. The right to a jury trial in appropriate cases is preserved inviolate to individuals, in the trial of questions of fact concerning their life, liberty and property, not as regards matters involved in the political conduct of the affairs of the State. By its legislation in such matters the law expresses the will of all, and any individual is included therein.

Looking upon the matter on a lower and narrower ground, it has been consistently held that the legislature may provide new remedies, which may incidentally affect the right to a jury trial theretofore existing in any given case, where that right is not in general seriously affected. The matter becomes one of degree, a consideration of the value and necessity of the new remedy as compared with the seriousness of its effect

upon the existing right. Applying this principle from what we have said before, there can be little doubt in the matter. A simple, direct and expeditious method of revising results in elections is substituted for a method expensive, cumbrous and no longer adequate. We may fairly say that the effect of the new provision is incidental only. The judge committed no error in this regard.

The remaining reason of appeal relates to the question whether the ballots were properly counted. Upon this point respondent contends that they were not. General Statutes, § 598, contains certain provisions regarding voting a split ticket, as printed in the footnote.

The claim of respondent arises under the last reason of appeal as stated earlier in this opinion, and is to the effect that if a voter desires to split his ticket and to indicate the person whose name he desires to stand first thereon, he must place the figure "1" opposite the name of such person.

In the recount of the ballots it appeared that the petitioner was allowed certain votes resulting in his obtaining a position as first named upon a plurality of the votes cast for selectmen, and was also declared

---

When any elector is entitled to vote for more than one candidate for the same office, as in the case of selectmen, justices of the peace or representatives, any elector who places a cross-mark 'X' opposite the name of any candidate for such office shall place such mark opposite the name of each candidate for such office for whom he is entitled to vote, or his ballot shall be counted, as to the candidates for such office, only for each candidate opposite whose name the elector has placed the cross-mark 'X'.

Any elector who wishes to vote a split ticket for selectmen may indicate his choice by placing the figure '1' instead of the cross-mark 'X' in the voting space at the left of such candidate's name and a cross-mark 'X' in the voting space at the left of the name of the other candidate for selectman for whom he votes, and the candidate so designated by the figure '1' shall be deemed to be first named on such ballot,

elected to the position of first selectman, by means of certain ballots upon which an "X" was placed opposite his name, in accordance with the provisions of the first quoted paragraph of § 598 as printed in the footnote. It is the contention of respondent that such a construction of the law is erroneous, and that such a result desired by any voter can only be brought about by the use of the figure "1" as provided in the second quoted paragraph of the section, that is, that the latter method is exclusive.

In *Beckley* v. *Alling*, 91 Conn. 362, 99 Atl. 1034, we held to the contrary, and that the second provision was permissive only, and was intended to provide for a rule more convenient and easily understood than the one theretofore furnished by the statute, but not to prevent recourse to the earlier provision, wherever applicable, if the elector should so choose. The respondent desires us to overrule this decision. We see no reason for so doing. The earlier and the later provision can well stand together. Combined they meet every exigency likely to arise. If the voter can effect his purposes by the method provided in the first paragraph, he is at liberty to do so; if not, use of the method indicated in the second paragraph is available.

Two supposititious instances are brought to our attention by counsel for respondent upon his brief, which he claims under our ruling in the case last cited would make it impossible for a voter to express his choice for selectmen and first selectman, should he desire to vote in a certain way. These instances are not convincing, nor the supposed difficulties insoluble by adhering to our rule as heretofore declared, always bearing in mind that every ticket will necessarily indicate upon a count the name of someone as having first place upon the plurality of the ballots cast for first selectman, unless there is a blank "no nomination" space.

Respondent further urges that the instructions printed upon the stub of sample ballots refer only to the method of voting for selectmen appearing in the second paragraph as quoted in the footnote, and that this is a legislative construction of the statute favorable to his contention. We can see nothing in the stub indicating any legislative intent beyond telling the elector the easiest and surest way to record his vote.

In the action of the judge there is no error.

In this opinion the other judges concurred.

