## KING W. MANSFIELD
*vs.*
## ALBERT T. SCULLY

| Superior Court | Fairfield County | File No. 65689 |

MEMORANDUM FILED OCTOBER 30, 1942.

*Cressy, Bartram, Melvin & Sherwood,* of Stamford, for the Plaintiff.

*David Goldstein,* of Bridgeport, and *John Mountain,* of Westport, for the Defendant.

Memorandum of decision in election contest involving validity of absentee voting.

McEVOY, J. The petitioner was an elector and a candidate for first selectman at the town meeting held on the 5th day of October, 1942, at the Town of Westport, Connecticut.

Prior to that date, Willard R. Williams talked with various electors who then expressed their belief that they would be absent from Westport and would not be able to vote, personally, at the town meeting on the 5th day of October, 1942.

By reason of these various conversations, Mr. Williams procured blank instruction certificates; caused the blank spaces on the certificates to be typewritten in light blue letters with full directions as to how the absent voter desired his vote to be cast and leaving only the signature blank to be filled in by the absent voter.

In this form these instruction certificates were mailed or delivered to the absent voter. These absent voters signed these certificates; made an affidavit in each case upon each such certificate and returned them to the town clerk at Westport, Connecticut.

These certificates were then delivered by the town clerk to the moderator, who, in turn, delivered them to the electors, John H. Mountain and Harry R. Sherwood, who had been duly designated by the moderator to cast the votes of each of the absent voters.

One of the electors, Harry R. Sherwood, protested to the moderator that 32 of these certificates of instruction designated as "ballots" were not made out in accordance with the provisions of the law, since it appeared that these ballots were not made out or prepared, personally, by the voter in each case, but that they were made out by Mr. Williams in all respects except as to the signature which was made by the voter.

Notwithstanding this protest, the moderator ordered that these ballots be, and they were, cast in favor of Albert T. Scully for the office of first selectman.

Of all of the votes as cast, Albert T. Scully was declared to have received 1,555 votes and King W. Mansfield was declared to have received 1,538 votes. By reason of the declared

votes and of the inclusion of the protested 32 ballots it was declared that Albert T. Scully was elected as first selectman.

If the protest as to the casting of the 32 ballots had been sustained then King W. Mansfield would have received 1,538 votes and Albert T. Scully would have received 1,523 votes—which would have resulted in the election of King W. Mansfield as first selectman of the Town of Westport, Fairfield County, Connecticut.

The exercise of the franchise, by way of voting, is a privilege. It is not a right. Since it is a privilege the General Assembly may prescribe the manner and form in which the privilege may be exercised.

Until very recently, electors were required to vote in person. Until recent years an elector was not permitted to vote in any way except by direct act exercised by him.

"The General Assembly has power to provide by law regarding the conduct of elections. Such conduct is an administrative exercise of a political power." *Meigs vs. Theis,* 102 Conn. 579, 594.

"Further, it is to be observed that, in its statutes regarding elections, the General Assembly provides by way of elections a mode of expressing determinations and exercising powers on the part of the whole electorate, the instrument of the sovereignty of the people, and as incidental thereto proceedings to secure the revision of any errors occurring in the elective process." Id. p. 597.

"In the days before the adoption of the Constitution in Connecticut, elections were simple affairs. Ballots were not required by law in town elections until long after the adoption of the Constitution. The electors of that time voted in such manner as they by their own resolution provided. The electors probably stood up and were counted; they 'divided the house.' If ballots were used, they were of the simplest kind, an open ballot." Id. p. 596.

The fundamental purpose for many years has been, and still is, to so provide that each qualified voter may be permitted—and indeed, required—to secretly prepare and, in so far as circumstances permit, cast his own ballot.

At the January session of the General Assembly in 1941,

the then existing statutes which prescribed and regulated the method of voting were amended, in part, viz: "Sec. 108f. Absentee Voting. (a) Any qualified elector of this state who shall be absent from the state during the entire day of any national or state election, or who, because of illness or physical disability, shall be unable to appear at the polling place on such date, or any qualified elector of this state who shall be absent from the state during the entire day of any town, city or borough election because of his being in active service with the army, navy, marine corps or coast guard of the United States, may cause his vote to be cast at such national or state election, or such town, city or borough election, in the manner and subject to the conditions hereinafter stated.

(c) The blank form of affidavit and voting instruction shall be in the form prescribed by the secretary of the state, who shall cause to be printed a sufficient supply of such blanks and furnish to each town clerk such number as he may request or as the secretary shall think sufficient. It shall contain blank spaces for the full name of the applicant, a statement that he is a citizen of the United States, a resident of the town in which he desires to vote, and the ward, precinct or voting district in such town in which he is entitled to vote, if he knows, and that he is registered on the last completed registry list of such town, ward, precinct or voting district, and is not registered on any other voting list; it shall also state that he expects to be absent from the state on the day of election on account of imperative or urgent reasons requiring his presence eleswhere, and shall state such reasons, or that he anticipates that he will be unable to appear at the polling place by reason of illness or physical disability, or that he shall be absent from the state due to his being in active service with the army, navy, marine corps or coast guard of the United States, and shall state where he is stationed in such service and with which branch of the armed forces of the United States he is connected, and that he has not been paid or promised, and that he does not expect to receive, any reward or compensation for his vote. Such blank form shall also contain instructions to the voter for casting his vote. Upon such form shall be printed the following directions to the voter: If you wish to vote a straight party ticket use form (1), inserting in the blank the name of the party whose ticket you wish to vote, and do not mark or use form (2) or (3); if you wish to vote the party ticket as a whole, but to vote against

one or more of your party candidates, fill up form (2) so as to express clearly your desire, and do not mark or use form (1) or (3); if you do not wish to vote any party ticket but to vote for certain persons for particular offices, fill up form (3) so as to express clearly your desire and do not mark or use form (1) or (2).

(e) The voter, having procured said form, shall fill out the blanks therein, which state his citizenship, right to vote and residence and the other facts required by subsection (c), and shall fill up such of the blanks for instructions as shall clearly state the manner in which he wishes his vote to be cast, and shall sign and swear to such statements and instructions before an official authorized to administer oaths, provided, in the case of any qualified elector of this state who shall be absent from the state during the entire day of any town, city or borough election because of his being in active service with the army, navy, marine corps or coast guard of the United States, such oaths may be taken by an official authorized to administer oaths or by any commissioned officer of the army, navy, marine corps or coast guard of the United States. He shall also, unless he is personally known to such magistrate or commissioned officer, prove to the satisfaction of such magistrate or commissioned officer that he is the person named in said form. Such magistrate or commissioned officer shall then fill out his certificate in the form following, and shall sign such certificate and attach thereto, or impress thereon, unless he is a judge, justice of the peace, town clerk, commissioner of the superior court holding said office and residing in this state, or a commissioned officer in the army, navy, marine corps or coast guard of the United States, his official seal.

State of......................

ss. (month, day and year)

County of....................

Then appeared before me ................. personally known or satisfactorily identified to me as being the person bearing such name, and signed and swore to the above affidavit and voting instruction; and I certify that I did not solicit or advise such voter to vote for or against any political party, or for or against any candidate or measure, and that I have not disclosed and will not disclose to any person, unless required to testify thereto in some competent court, how such voter instructed his vote to be cast. Effective March 17, 1941."

In 14 places the statute, as amended, prescribes that the *voter shall* fill out the blanks.

Obviously, it was the expressed intention of the General Assembly that the voter, and not someone purporting to act for him, should actually fill out the blanks, as well as that the voter should sign them.

Section 11 of 247 of the Public Acts of 1889 (p. 157) provided as follows: "No official or other person at any election held under the provisions of this act shall, in the enclosure or room where the ballot-box is placed, or in the rooms or booths prescribed by section four of this act, suggest the name of any political party or candidate for any office to any elector, or assist or offer to assist any elector in the preparation of his ballot."

This section was the predecessor of the present section 611 of the General Statutes, Revision of 1930, which provides as follows: "Interference Prohibited. No official or other person at any election shall, in the inclosure where the ballot box and stub box are placed, or in any room or booth herein mentioned, suggest to any elector the name of any political party or candidate for any office. No person shall assist or offer to assist any elector in the preparation of his ballot to be used in voting, unless appointed for that purpose by the moderator of the meeting. No elector shall receive such assistance unless he shall be physically incapable of preparing his ballot, and the moderator shall be the sole judge of such physical disability. In case of such physical disability, the moderator shall, upon the request of the elector, appoint two electors, one from each of the dominant parties, and such persons shall render such assistance as the elector may require in the preparation of his ballot."

This provision was in force and governed the conduct of the electors and the election held in Westport on October 5, 1942.

The very obvious purpose of that provision was to see to it that the elector did, in fact, prepare and cast his own ballot free from interference by any volunteer and that, in case of his inability, any assistance rendered to him should be in accordance with the direction of, and under the supervision of the moderator.

It will thus appear that the well-defined policy of the law

of Connecticut in this respect was declared and has been adhered to for more than half a century.

By subsequent amendments the original section has been expanded to its present form so as to permit the rendering of assistance to the voter—but only in the manner specifically prescribed by the statute.

In each of the revisions of the statutes subsequent to 1889, that is in 1902 (§1652); in 1918 (§601); and in 1930 (§611), the heading has been entitled, "Interference Prohibited."

The use of these two words clearly evinces the legislative intent to permit—and indeed to require—that the voter make up his own ballot and that the decision as to the content of the ballot be that of the voter and not of any one who purports to assist him.

No ballots, as the term is usually understood, were used in the town election at Westport. The voting was done by the use of voting machines.

The votes of the electors who were absent and who chose to exercise the privilege of voting in accordance with the then existing law, were "cast" by the act of the electors in indicating the wish of the absent electors as expressed in the "certificates of instruction" by use of levers on the voting machines.

Obviously, the absent electors could not physically operate the voting machines.

Under these circumstances the "certificates of instruction", in connection with the use of the voting machine, constituted the "ballots" of the absent voters.

Section 108f of the 1941 Supplement to the General Statutes, in effect on October 5, 1942, contains amendments of former sections and these amendments were enacted so as to specifically include, as absent voters, those enrolled or absent in war service.

In the last paragraph of this section, there is retentive repetition of the provision that the voter "shall sign and swear to" the statements and instructions in the certificate of instruction before "an official authorized to administer oaths." By virtue of the amendment to the previous legislation the authority to administer the oath is extended to include "any

commissioned officer of the army, navy, marine corps or coast guard of the United States."

As if to confirm the legislative intent and to confine the statement of the intention to the personal act of the absent voter, this section requires the officer to certify that he "did not solicit or advise such voter to vote for or against any political party, or for or against any candidate or measure."

The continuity of the letter and spirit of this legislation simplifies its interpretation.

"In determining the legislative intent, we must look beyond the literal meaning of the words to the history of the law, its language considered in all its parts, the mischief it was designed to remedy and the policy underlying it." *Chambers vs. Lowe,* 117 Conn. 624, 626.

"The language used is so singularly clear and unambiguous that it might well be said to fall within the rule that 'it is not allowable to interpret what has no need of interpretation.' " *O'Brien vs. Wise & Upson Co., Inc.,* 108 Conn. 309, 315.

In construing a statute, the legislative intent rather than the letter should prevail, and to give effect to that intent, the statute should be read in the light of its object and the nature and reason of the remedy it provides; when one construction will lead to a public mischief which another construction will avoid, the latter will be favored unless absolutely forbidden by the terms of the statute. *Bridgeman vs. City of Derby,* 104 Conn. 1.

"Statutes similar to that under review providing for a re-count of votes result in their action in a certificate of election; they do not put the contestor into the office nor remove the contestee. The former must actually gain possession of the office by some further proceeding. The contest is not one for the possession of an office, it is to determine the result of an election, its legality and fairness." *Meigs vs. Theis,* 102 Conn. 579, 593.

Prior to October 5, 1942, when Mr. Williams sent certificates of instruction to absentee voters, before sending them, he placed on each certificate of instruction a small "v" or check mark opposite the line provided for the signature of the absentee voter.

On two of the certificates of instruction the oath was ad-

ministered and so noted by Mr. Williams, before whom the voter in each case appeared, and certified that this was his intention.

Before either of these voters signed the certificate of instruction a small "v" or check mark was made by the attesting officer beside the line upon which the voter was required to sign.

Such "v" or check mark constituted such a mark or device as is prohibited by the provisions of section 606 of the General Statutes, Revision of 1930, which provides: "If any ballot shall contain any mark or device other than as hereinbefore provided, so that the same may be identified in such a manner as to indicate who might have cast the same....the ballot shall not be counted, but shall be kept by the moderator and returned to the town clerk in the ballot box in a separate package from the ballots counted at such election."

Upon the pleadings and the evidence it is concluded that each of the 32 certificates of instruction was made out and filled in, contrary to and in violation of the then existing law; that the protest of the objecting elector against the casting of 32 votes, based upon the 32 certificates of instruction, should have been sustained; that each of these certificates of instruction should have been rejected and that the 32 "votes" based upon these certificates of instruction should not have been cast in favor of the respondent, Albert T. Scully, for the office of first selectman of the Town of Westport.

It is further found that at the town election held at Westport, Connecticut, on the 5th day of October, 1942, of the votes lawfully cast, the petitioner, King W. Mansfield, received 1,538 votes for the office of first selectman and that the respondent, Albert T. Scully, received 1,523 votes for the office of first selectman and that the moderator should not have declared these votes in the numbers in which he declared them but the moderator should have declared that the petitioner, King W. Mansfield, was duly elected as first selectman of the Town of Westport, in Fairfield County, Connecticut.

The prayers of the petitioner's petition are granted and decree and judgment may enter in accordance with the terms of the decision in Denny vs. Pratt, 104 Conn. 396, 398. The judgment file may be drawn up and recorded when signed and, thereafter, a certificate of election of King W. Mansfield as

first selectman of the Town of Westport, Fairfield County, Connecticut, based upon the judgment then filed, shall be issued under the seal of the court.

Decree and judgment may enter accordingly.