ORVILLE S. MALLETT vs. WARREN E. PLUMB.

New Haven and Fairfield Cos., Jan. T., 1891. ANDREWS, C. J., CARPENTER, LOOMIS, and TORRANCE, Js.

Section 51, Gen. Statutes, provides that "the ballots cast at any town meeting for the election of town officers, shall, immediately after they have been counted, be returned by the presiding officer to the ballot box or boxes, which shall be locked, sealed, and deposited by him in the town clerk's office, so that the same cannot be opened without his knowledge, and the clerk shall carefully preserve the same with the seal unbroken for six months after such meeting." Held that where, upon an application for a recount, the judge is satisfied upon legal evidence that the ballots have not been tampered with or disturbed, they should be admitted in evidence even though some of the provisions of the statute have not been complied with.

Upon examining the ballots on a recount, three envelopes were found from which the ballots had been removed and it could not be ascertained what they were; one of the envelopes had not been endorsed, one bore a distinguishing mark, and one the name of the voter. Held that they were clearly illegal, and in the uncertainty as to what the votes were, could not be taken into the recount for any purpose.

One of the candidates was Orville S. Mallett, and one ballot was found with the name of Orville Mallett upon it and one with that of O. J. Mallett. The judge below found that there was no other person residing in the town of the name of O. S. Mallett or Orville Mallett or any similar name, and held that the ballots were intended for the candidate mentioned. Held that the evidence was properly admitted.

Section 48, Gen. Statutes, provides that "of the persons elected selectmen by any town, the person first named on a plurality of the ballots cast for them or any of them, shall be first selectman." Held to mean the person first named on a plurality of the ballots, as actually cast, and not the first named on a set of ballots or a party ticket.

The name of M was placed first on a party ticket for selectmen and that of

*P* on an opposing ticket. The first mentioned ticket received as a whole a plurality of the votes cast, but by reason of *M's* name being stricken from a few of the ballots a larger number of the ballots cast contained the name of *P* as the first name upon them. Held that *P* was elected first selectman.

By the striking of *M's* name from the head of any ballot cast, the next name after became the first name on the ballot.

[Argued January 23d—decided April 20th, 1891.]

PETITION to *Phelps, J.*, under Gen. Statutes, § 58, for the opening of the ballot box containing the ballots cast at the last preceding election for selectmen in the town of Trumbull and a recounting of the ballots, the plaintiff claiming to have been elected first selectman of the town, and the defendant holding the office and claiming to have been elected to it. The facts were found by a committee and a further finding made by the judge, and judgment rendered for the plaintiff. The defendant appealed. The case is fully stated in the opinion.

*S. Judson*, with whom was *C. S. Canfield*, for the appellant.

*R. C. Ambler*, for the appellee.

TORRANCE, J. At the annual town meeting held in Trumbull in October, 1890, Plumb, the defendant, was declared elected to the office of first selectman. Mallett, the plaintiff, thereupon brought a petition under the statute, before a judge of the Superior Court, alleging that he, Mallett, and not Plumb, had been elected to that office, and praying that it might be so adjudged and declared.

In the first four paragraphs of his petition the plaintiff alleged in substance that, at said election, he and one Nichols were the candidates for the office of selectman upon the ballots known as democratic ballots, and that Plumb and one French were the candidates for that office upon the ballots known as republican ballots; that the plaintiff was first named for that office upon the democratic ballots, and Plumb was first named therefor on the republican ballots; that

there were ninety-eight ballots counted for Mallett, one hundred and five for Nichols, one hundred and one for Plumb, and eighty-one for French; that there were therefore cast for selectmen at said election one hundred and five of the democratic ballots and only one hundred and one of the republican ballots; and that upon the plurality of the ballots so cast for selectmen or any of them the petitioner was first named. And upon this ground he claimed the office of first selectman, under section 48 of the General Statutes.

The defendant demurred to these allegations, on the ground that, upon the facts alleged, the plaintiff was not the person first named upon a plurality of the ballots within the meaning and intent of the law. The judge overruled the demurrer, and this is assigned as one of the errors upon this appeal.

The plaintiff further alleged, in substance, that certain ballots were cast for the plaintiff for said office at said election, which should have been counted for him, but were not; and that certain ballots cast for the defendant, upon which the defendant's name did not stand first, were counted for him as if his name stood first thereon.

The defendant in his answer alleged that the ballot box used at the election, and to which, after the election, the ballots had been returned, had not been locked, sealed, deposited and kept as the law requires; and on this ground he objected to the opening of the box and the counting of the ballots. The judge heard the parties with their evidence upon this part of the case, and found in substance the following facts:—

When produced in court the ballot box was locked but not sealed. There was an extra slide under the lid of the box which covered the aperture in the lid, and when the box was locked the slide could not be moved, and nothing could be put in or taken from the box without unlocking it or breaking it open. The ballots were counted and returned to the box by the counters out of the presence of the moderator. The box was then brought into the polling place and delivered to the moderator, who locked and delivered the same, with the key, to the town clerk, who was there present. Thereafter the moderator had no knowledge or means

of knowing whether the box or ballots had been in any way disturbed or tampered with.

The town clerk put the box that night in the town clerk's office, and next day deposited it in an up-stairs room, which was not kept locked, and placed the key to the box in a drawer, to which no one but himself and wife had access. The box, ballots and key remained in their respective places until produced in court. The members of the town clerk's family, his hired help, visitors at his house, and the public generally, had access to said room if occasion required. No evidence was introduced to show that the box or the ballots therein had been actually molested or in any way disturbed. And the judge found from the foregoing facts that the ballots found in the box were the same as were cast at said election "and that neither the box nor the ballots had been in any manner tampered with or disturbed."

The judge overruled the defendant's objection, and after all the other evidence in the case had been heard, and the arguments made, ordered the box to be opened, and the ballots counted by a committee. The action of the judge in ordering the box to be opened and receiving the result of the recount as evidence, is one of the errors assigned on this appeal.

The plaintiff's name is Orville S. Mallett, and it appeared upon the recount that ninety-seven ballots were cast for Orville S. Mallett, one ballot for Orville Mallett, and one for O. J. Mallett. Upon this part of the case the finding is as follows :—" It appeared that there was no other person residing in said town by the name of O. S. Mallett or by the name of Orville Mallett, or by any similar name, but no evidence was introduced to show specifically whether there was any person in said town or upon the registry list by the name of O. J. Mallett, nor to show whether any of such votes had been rejected by the counters or presiding officer. I find upon the foregoing facts, and from said ballots, that the ballots cast for Orville Mallett and O. J. Mallet were intended by the voters thereof to be cast for the petitioner as first selectman."

One of the reasons of appeal is based upon this ruling, and is as follows:—" Said judge erred in holding that said ballots cast for O. J. Mallett and Orville Mallett should be counted for the petitioner."

The record however does not disclose that the defendant made any objection on this part of the case, except to the admission of evidence as to " whether there was any person residing in said town by said names aforesaid." This evidence in such a case was clearly admissible, if the opening of the box and the recount were legal. Whether the evidence was objected to on this general ground, or on the specific ground that in such cases the court could not make enquiries of the nature of those objected to, is perhaps not quite clear. On the facts found the ruling in question was right and the specific objection was not well taken.

Upon opening the ballot box and recounting the votes, it appeared that Mallett had ninety-nine votes and Plumb ninety-eight votes for the office of first selectman, and that Nichols had one hundred and five votes for selectman.

If then the judge did not err in ordering the box to be opened, and in accepting the report of the committee appointed to make the recount, it would appear that Mallett was elected to the office of first selectman, and the question raised by the demurrer to the first four paragraphs of the petition would be of no importance in the case at bar.

The defendant however claims that the judge erred in ordering the box to be opened, and in accepting the report and result of the recount. The question then is, whether these claims of the defendant are well founded.

One of the claims of the defendant on this part of the case is, that unless the provisions of section 51 of the General Statutes have been fully complied with, the evidence was not admissible for any purpose. That section provides as follows:—" The ballots cast at any town meeting for the election of town officers shall, immediately after they have been counted, be returned by the presiding officer to the ballot box or boxes, which shall be locked, sealed and deposited by him in the town clerk's office, so that the same

cannot be opened without his knowledge. And the clerk in whose office such box or boxes shall be deposited, shall carefully preserve the same with the seal unbroken for six months after such meeting."

The finding upon this part of the case clearly shows that in the case at bar there was a gross disregard of the statutory provision. The question is, what is the effect of such conduct? Does it make the box and its contents utterly worthless as a source of evidence, and therefore inadmissible, as much so as if the statute had expressly so provided; or are the box and its contents admissible provided it can be shown to the satisfaction of the trier, as in this case, that neither the box nor the ballots had been in any manner tampered with or disturbed? We think the latter construction must prevail.

In all contested cases of this kind, the ballots cast, if they have all been returned to the box immediately after the election, and carefully kept in the same condition as when so returned, furnish in most cases the best evidence of the result of the election. The main object of the statute is to make this source of evidence still more available by throwing around it these safeguards.

The statute in question contains divers provisions all looking to this main purpose or object. It enjoins with equal explicitness the observance of *all* of these requirements, whatever may be thought of their relative importance. If the reasoning of the defendant is correct, then the non-observance of any one of these requirements shuts out the ballots as a source of evidence, and the main object of the legislature in enacting the statute is defeated, even in cases where the evidence makes it clear beyond question that the ballots have not been tampered with or disturbed in any way.

For instance, if the ballots have all been returned to the box, and the box itself has then been locked, sealed, deposited and kept, as the statute requires, but it turns out, as in this case, that the ballots were returned to the box by the counters in the absence of the moderator, instead of by the latter, as the law requires, in such a case the defendant

claims that the ballots cannot be used as evidence, even though it should be clear beyond doubt that they have otherwise been preserved intact and as the law requires. This in many cases would be sacrificing the substance to the shadow, would be obeying the letter that killeth rather than the spirit that maketh alive. We cannot consent to such a construction, unless the language of the statute imperatively requires it.

The statute does not expressly provide that a failure to comply with any one or all of its requirements shall be followed by any such consequence, and this silence is quite significant under the circumstances. The legislature might easily have so provided if such had been its intention.

Here was a well known source of evidence frequently resorted to in cases like the one at bar when it was available. The law permitted a resort thereto even before it threw around it the safeguards of the statute. It permitted the parties to prove, as best they could, by legal evidence, that the ballots had not been tampered with or changed in any way. The legislature intended to make this source of evidence still more, and not less, available. To accomplish this it prescribed certain requirements looking to the end in view, some of more and some of less importance, but enjoined the observance of all of them upon officials who might neglect their duty. It knew also that even if the officials performed their duty as to certain of the requirements, the box might be opened or the lock broken or the seal destroyed by accident or mistake or by purposive action on the part of others without authority, and that in other ways, which readily suggest themselves, the box or the ballots might be so handled or kept as to require evidence that the value of the ballots as a source of evidence had not been impaired or destroyed. If then the legislature intended to change all this, and to make the mere fact of non-compliance with any of the statutory requirements, or the want of a seal or a lock, or other defect of a like nature, conclusive against the use of the ballots as evidence, even in cases where it was clear that the ballots had not been tampered with or disturbed in any

way, we think it would have said so expressly, and not left it to doubtful inference.

The law seems to content itself with punishing officials who refuse to perform, or who fraudulently perform, certain duties imposed upon them with regard to this matter; it also punishes those who within a certain time after an election fraudulently abstract any vote from the box or fraudulently put any vote in the box, and there it seems to leave the matter.

We think the main object of the statute is best subserved by holding, as we do here, that where the trier is satisfied upon legal evidence that the ballots have not been tampered with or disturbed, they should be admitted in evidence, even though some of the provisions of the statute have not been complied with.

We hold, therefore, that it was not error to open the ballot box and admit the evidence as to the result of the count, merely on account of the claimed non-compliance with the provisions of the statute in question. The recount, however, further showed, and the judge finds, that the ballot box contained the following: " 205 envelopes properly endorsed, from which the ballots had been removed and counted; one envelope not endorsed, from which the ballot had been removed and counted, but it did not appear for what candidates it had been counted; one envelope on which was a distinguishing mark, from which the ballot had been removed and counted; and two envelopes with the names of the voters who had cast the same written thereon, one of which had not been opened, and from the other the ballot had been removed and counted, but it did not appear what names were on it."

The ballot in the unopened envelope referred to in the above finding, was rejected by the judge; but the other three ballots which had been contained respectively in the envelope not endorsed, in the envelope with a distinguishing mark, and in the envelope bearing on it the name of the voter, could not at the time of the recount be ascertained, nor did it appear for whom they had been cast or counted,

and so they were not rejected. These three ballots were clearly illegal. Public Acts of 1889, chap. 247.

These three ballots thus entered into the result of the re-count, as found by the committee and the judge, because neither the one nor the other could then tell which of the 208 apparently valid ballots in the box had been contained in the three envelopes, nor for whom they had been cast or counted.

The defendant objected to the report of the committee appointed to count the ballots on this ground, and claimed "that the result as reported and found could have no con-trolling effect, because it appeared that there had been counted, at the election, certain illegal ballots, and because it did not appear for which candidate said illegal ballots had been counted." This objection and claim the judge over-ruled, and this is assigned for error.

It further appears from the finding that no evidence in support of the allegations of the petition was offered, except the result of the recount as reported by the committee. The uncertainty arising from the fact that these three illegal bal-lots entered into and affected the result of the recount, vitiates the entire proceeding, and no finding could be legally based thereon. The burden of proof was upon the plaintiff to show that he was legally elected, and if the only evidence he offered was uncertain and legally worthless, it was as if he had offered no evidence, and the finding based upon such evidence can have no foundation in fact or in law.

It is by no means certain from the finding that the con-clusion of the court that Mallett was elected to the office of first selectman is based upon the result of the recount. That conclusion is thus stated in the finding:—" The peti-tioner was first named on the ticket which had a plurality of the ballots cast for selectmen or any of them at said town meeting, and Elliott P. Nichols, named second on said ticket, had a plurality over all the other candidates." The language of this conclusion, as well as its position in the finding, seems to indicate that it is based upon the facts ad-mitted by the demurrer to the first four paragraphs of the

petition, rather than upon the result of the recount. But if it is based upon the result of the recount, then for the reasons given we hold that the judge erred in overruling the defendant's objection and claim upon this part of the case.

This brings us to the principal question raised by the demurrer to the first four paragraphs of the petition. Section 48 of the General Statutes, upon which the claims of the parties on this part of the case arise, reads as follows: " Of the persons elected selectmen by any town, the person first named on a plurality of the ballots cast for them or any of them shall be first selectman."

The plaintiff's claim seems to be that, inasmuch as Mallett's name stood first on the Nichols ticket, he was elected, because Nichols had a plurality of the ballots cast at the election; and that this would be so even if Mallett's name had been erased from nearly every ballot that was cast for Nichols.

According to this claim, if the 105 ballots cast for Nichols were democratic ballots, and Mallett's name had been erased by the voters from all of them save one; and if French on the republican ticket had received no votes; then, by this one ballot, Mallett would be elected first selectman over Plumb, although the latter has 101 votes cast for him for the same position. This is the view of the law which the judge below seems to have taken.

The statute in question is perhaps susceptible of such a construction, for its meaning is by no means clear; but for several reasons we think it is not the correct construction. In the first place, such a construction ought not to be put upon language which is doubtful or uncertain, for it runs counter to the general rule that either a plurality or a majority of the votes cast is necessary to elect. " Our government and our institutions rest on the principle that controlling power is vested in the majority. In the absence of any provision of law to the contrary, the will of any community or association, body politic or corporate, is properly declared only by the voice of the majority." *State ex rel. Duane* v. *Fagan*, 42 Conn., 35. Section 45 of the General Statutes

provides that "in all elections of town officers a plurality of the votes cast shall be sufficient to elect, unless it is otherwise expressly provided by law." Election by a majority or a plurality is thus the general rule. Town officers must be elected by a plurality, unless it is otherwise expressly provided by law. It is nowhere otherwise expressly provided by law that the first selectman shall be elected by less than a plurality, unless such provision is contained in this 48th section. That section clearly does not expressly so provide, nor do we think it does so by necessary implication.

No good reason is shown for the existence of so marked an exception to the general rule; and if the legislature had so intended, it is reasonable to suppose that the language used would be so clear and explicit as to admit of no reasonable doubt. If that language does admit of doubt, we ought to adopt a construction in harmony with the general rule, if that be possible.

In addition to this, we think the statute itself, when fairly construed, does not favor the construction contended for by the plaintiff. The phrase "first named," as used in the statute in question, is somewhat ambiguous. It may mean the person whose name stands first on the ballot of his party when the voting begins. In such case he is said to "head the ticket." Used in this way, the phrase in question means the name standing first upon a *class* of ballots, namely, the "party ticket," so called, even though it should be found erased from many of the individual ballots actually cast. In this sense it could be claimed that Mallett was "first named" on all the democratic ballots cast for Nichols, even though his name had been erased from every one of them. If this meaning is to be given to the statute, then undoubtedly Mallett was elected first selectman.

That this was the meaning given to the statute by the judge who tried the case at bar is evident from the language of the finding, which is:—"I find the petitioner was first named on the *ticket*, which had a plurality of the ballots cast for selectmen or any of them at said town meeting." On the other hand the phrase in question may fairly mean the per-

son whose name stands first on any ballot actually cast, whether originally standing first thereon or not. In this sense, if the name originally standing first on the ballot cast is erased by the voter, then the person whose name is so erased is no longer "first named" on that individual ballot. We think the phrase "first named" is used in this last sense in the statute in question. The language of the statute is not "first named on a *ticket*" or *class* of ballots, but "first named on the *ballots cast.*" In this sense, upon the facts admitted by the demurrer, Plumb is first named on 101 ballots cast, while Mallett is so named only on 98 of such ballots. If this is the true construction, and we think it is, then Plumb and not Mallett was "first named on a plurality of the ballots cast" for the selectmen or any of them.

For these reasons the decision appealed from is reversed and set aside.

In this opinion the other judges concurred.