## J. LEROY BUCK vs. ANDREW G. BARNES.

First Judicial District, Hartford, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

In electing selectmen it is immaterial in what order the names of the candidates appear on the ballots. Each is entitled to all the votes cast for him, and the requisite number who have a plurality of the entire vote constitute the board. Of the board thus chosen, that member whose name stands first upon a plurality of the ballots actually cast and counted for them, or any of them, is, by General Statutes, Rev. 1902, § 1812, designated as "first selectman."

The position of first selectman is so far official that one entitled to the office may enforce his right by judicial proceedings; and the Act (General Statutes, Rev. 1902, § 1823) providing a summary process for testing the election of selectmen, authorizes the court to determine which one of the selectmen chosen is entitled to the grade or rank of first selectman.

Submitted on briefs Jan. 6th —decided Jan. 30th, 1903.

PETITION for a recount of ballots and a judicial determination that the petitioner, instead of the respondent, had been duly elected selectman of New Milford at its annual town election in October, 1902, brought to and heard by the *Hon. George W. Wheeler*, a judge of the Superior Court, who rendered judgment for the petitioner, from which the respondent appealed for alleged errors in the rulings of the court. *No error.*

At the annual town election of the town of New Milford, held on the first Monday of October, 1902, three selectmen were to be chosen by ballot. The law provides that at this election no elector shall vote for more than two persons for selectmen, and that the three persons receiving a plurality of votes shall be elected. At this election four persons only were voted for for selectmen: J. Leroy Buck and Levi S. Richmond, whose names were printed on the Democratic ticket—J. Leroy Buck being the one first-named—and Andrew G. Barnes and Henry H. Pomeroy, whose names were

printed on the Republican ticket—Andrew G. Barnes being the one first-named.

Henry H. Pomeroy received 500 votes, being a greater number than was received by any other candidate. Levi S. Richmond received 494 votes, being a greater number than was received by any other candidate except Pomeroy. Richmond, the second-named on the Democratic ticket, and Pomeroy, the second-named on the Republican ticket, were admittedly elected as two of the selectmen.

The only question was whether Buck, the petitioner, or Barnes, the respondent, received the greater number of votes for selectman. Four hundred and eighty-eight ballots were cast, on which Buck was voted for for selectman; on 480 of these ballots Buck's name stood first in order, and on 8 of these ballots it stood second in order, being pasted over the name of Henry H. Pomeroy, the second in order on the Republican ticket.

Four hundred and eighty-six ballots were cast, on which Barnes was voted for for selectman; on 485 of these ballots his name stood first in order, and on 1 of these ballots it stood second in order, being pasted over the name of Levi S. Richmond, the second in order on the Democratic ticket.

Upon this state of the vote the presiding officer declared Barnes, the respondent, to be duly elected first selectman, and Pomeroy and Richmond to be elected selectmen.

Buck brings this petition to determine the legal result of the election as between him and Barnes.

The trial court (*George W. Wheeler, J.*) found the facts as above stated, and held that upon these facts Buck was legally elected selectman, and rendered judgment accordingly.

The substantial error assigned in the appeal is that the court erred in adding to the 480 votes for the petitioner by ballots on which his name stood first in order, the 8 votes for the petitioner by ballots on which his name stood second in order. Error is also assigned in rejecting evidence to show that at the political primary the respondent was nominated for Republican candidate for first selectman.

*Donald T. Warner* and *Frederic M. Williams,* for the appellant (respondent).

*Daniel Davenport* and *John F. Addis,* for the appellee (petitioner).

HAMERSLEY, J.   The contention of the respondent seems to be that a candidate for selectman who has received a plurality of votes is not elected, if a portion of the votes for him are upon ballots on which his name stands first on the list of selectmen, and a portion of his votes are on ballots on which his name does not stand first; unless, indeed, one of these classes of votes is large enough to give him a plurality without resort to the other class.

This contention cannot be maintained.   The inhabitants of each town have always chosen certain persons for the general management of town affairs.   These persons were at first called townsmen, afterwards selectmen.   Until about 1672 their choice and duties were regulated mainly by town orders.   In the Revision of 1672 the general court provided that the inhabitants of each town should annually at town meeting choose a convenient number of their inhabitants, not exceeding seven, to be selectmen or townsmen, to take care of and order the prudential affairs of their town.   Statutes of 1808, p. 649, note.   The substance of this provision has remained in force until the present time, and is to be found in §§ 1802 and 1830 of the General Statutes, Rev. 1902.

The Constitution of 1818 requires the annual election of selectmen, and commits to them, with the town clerk, the power of deciding upon the qualifications of every person seeking admission to the privileges of an elector.   The statutory powers and duties of selectmen are confined to those involved in the general authority given them to order the prudential affairs, or to superintend the concerns of the town, as defined by custom, and such others as may from time to time be specified by law.

The selectmen are a board or committee of the town and their duties are collective.   It is convenient, if not necessary,

to the orderly and efficient conduct of their business, that they should have a head or chairman who may act for them in matters of routine and other matters which have received their approval. For a long period one of the selectmen has occupied this rank or position and has been called first select-man, the name being derived from the manner in which such chairman was ordinarily designated, i. e., by placing his name first on the list of selectmen chosen.

The mode of choice was regulated by the several towns, except as limited from time to time by statute. In 1852 selectmen were required to be chosen by ballot, and in 1858 by plurality vote. See Revision of 1866, p. 101. To what extent selectmen may have been chosen by ballot prior to 1852, is matter of conjecture.

In *Union* v. *Crawford*, 19 Conn. 331, it was held that selectmen, by virtue of their general authority to superintend the concerns of the town, were authorized to appear in suits to which the town was a party, and prosecute or defend as the case might require, as general agents of the town.

In 1860 the first selectman was authorized to act as agent, in the absence of any special appointment. Public Acts of 1860, p. 11, Chap. 14.

It is evident that the position of one of the selectmen, as head or chairman of the board under the name of first select-man, has existed from an early time, and the existence of such a position was assumed and recognized in the Act of 1860.

In the case of *State ex rel. Hull* v. *Hillard*, 42 Conn. 168, it was claimed that the first selectman was a public officer distinct from selectmen, and, as such, to be chosen by the electors at the annual town meeting; and that the fact of that choice was an essential part of the record of the meeting, and therefore the relator was entitled to a mandamus commanding the town clerk to record the fact of his election as first selectman. It appeared that the relator's name stood first on a plurality of ballots cast for selectmen, but that the moderator had declared the vote so as to indicate that the relator's name stood last on said ballots, and that the town

clerk had recorded the vote as declared by the moderator. We held that there was no such office as that of first selectman, independent of the office of selectmen, and that the mandamus as asked for could not issue. We did not hold that there was no such position, rank, or grade belonging to one of the selectmen chosen, as that of chairman or first selectman, nor that the relator could not receive judicial aid in establishing his right to that position. On the contrary, we said that if the relator had sought to compel a record of the selectmen elected in a different order, so that the name of the relator would stand first on the list of selectmen as recorded, a different question would have been presented.

Doubt having arisen as to the construction of the customary rule (or possibly as to its binding nature) for designating from the selectmen chosen the one who should act as first selectman, the legislature, in 1874, enacted as follows: " Of the persons elected selectmen, the person first named on a plurality of the ballots, cast for them or any of them, shall be the first selectman." This Act is not printed in the Public Acts of 1874, but appears in the Revision of 1875, p. 24, which was adopted by the legislature of 1874 and went into effect January 1st, 1875.

This statute, like that of 1860, recognizes a grade or rank among selectmen called first selectman, as it had long existed, and reduces to definite certainty the customary rule for designating from the selectmen chosen the one who should be first selectman.

It is to be noted that, in placing the name of a candidate for selectman first on the ballot which he casts, an elector does not vote for first selectman. He simply indicates a preference, which the law will regard, in designating that one of the selectmen chosen who shall act as first selectman. His ballot is counted in the election of selectmen, but in the designation of first selectman it cannot be counted for any purpose unless his favorite is among those chosen for selectmen. And so it may happen, as it did in the present case, that a plurality of voters may thus indicate their preference for one to be first selectman, and yet another, for whom a

less number of voters have so expressed their preference, be designated for that place.

This is not, in any strict sense, an election by the electors. It is the application of an arbitrary rule for designating, from the selectmen chosen, one to be first selectman, framed with a view to give effect, as far as practicable, to the preferences of those whose votes have elected the selectmen. By the mandate of the Constitution, selectmen must be chosen by the electors, but one of their number, who shall act as their chairman or first selectman, may be designated by vote of the selectmen themselves, or in any other appropriate manner sanctioned by law.

In 1879 this case arose (*Brown* v. *Blake*, 46 Conn. 549): At the annual town meeting of Hartford, Brown and Blake, with others, were elected selectmen. It appeared, from the ballots cast and counted, that of those chosen for selectmen Blake's name stood first on the plurality of ballots cast for them or any of them, and that Brown's name stood first on the next greater number of ballots, the number of such ballots cast for Blake being 40 more than those cast for Brown. The moderator declared that Blake was elected first selectman. Brown brought his complaint under the recent statute of 1878 (Public Acts of 1878, p. 326, Chap. 102), which was similar in substance to the Act under which the present proceedings are brought, to establish his right to be first selectman. The provisions of the Act applied to selectmen and other specified town and city officers. The complaint alleged the facts above stated, and also that more than 100 ballots on which Blake's name stood first in order were fraudulently put into the ballot-box and illegally counted. Blake moved that the complaint be dismissed because the court had no jurisdiction to pass on the validity of an election of first selectman. This motion was denied. The judgment recites that the petitioner alleges that he was duly elected to the office, grade and rank of first selectman, finds the allegation of fraud to be true, and that, of the persons elected selectmen, the petitioner was first named on a plurality of ballots lawfully cast for them or any of them, and was entitled to

said office, grade, and rank of first selectman. Upon a motion in error by Blake, assigning a denial of the motion to dismiss as the only error, we sustained the judgment, and held, in substance, that the right to the position of first selectman, with its honor and possible emolument, was entitled to judicial protection, and that the Act of 1878, in providing a summary proceeding for testing the election of selectmen, might properly be treated as authorizing the court to determine, as between the persons elected, the right to the position of first selectman which depended upon facts disclosed by the lawful counting of ballots lawfully cast for selectmen. The justice of this result cannot be questioned; but there are expressions in the opinion, not material to the point necessarily decided, that may need explanation, certainly unless read in connection with the record and briefs which do not appear in the report of the case.

In *Mallett* v. *Plumb*, 60 Conn. 352, 361, we held in substance that the Act of 1874, in declaring that of the selectmen chosen that one who was first named on a plurality of ballots cast for them or any of them should be first selectman, meant the one whose name stood first on a plurality of such ballots, as said ballots appeared when actually cast and counted.

The law in respect to the choice of selectmen as indicated by custom, legislation and our former decisions, supports the following conclusions : *First.* Selectmen must be chosen annually by the electors of each town. This requirement of the Constitution cannot be altered by the legislature. By statute they must be chosen by ballot, and the number as fixed by law who receive a plurality of the votes cast are elected, and the election of selectmen is not affected by the order in which their names appear on the ballots cast for them. *Second.* Of the selectmen chosen, one is designated by law as their head or chairman under the name of first selectman, and the law designates that one whose name stands first on a plurality of ballots actually cast and counted for the selectmen chosen, or any of them. *Third.* The position of first selectman is so far in the nature of an office, that the one entitled to it may enforce his right by judicial proceed-

ing, and the Act providing a summary process for testing the election of selectmen authorizes the court to determine which one of the selectmen chosen is entitled to the position of first selectman.

It follows that the trial court correctly held that the petitioner was elected selectman.

The exception taken to the ruling on evidence is without merit.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.