STATE EX REL. ROBERT P. MCCARTY *v.*
JOHN R. THIM ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS AND DICKENSON, JS.

Argued March 7—decided April 18, 1944.

*Jeremiah D. Shea,* for the appellant (plaintiff).

*James P. Doherty,* for the appellee (defendant Fitch).

*Bernard Pellegrino,* for the appellees (the other defendants).

MALTBIE, C. J.   At the town meeting in the town of Hamden held in October, 1943, the two candidates for selectmen upon the Republican ticket were elected, but the two candidates for that office on the Democratic ticket, the plaintiff Robert P. McCarty and George P. Fitch, one of the defendants, received an equal number of votes.   Voting machines were used at the election. Section 281 of the General Statutes reads as follows: "When the number of assessors, members of the board of relief, selectmen, constables or grand jurors to be elected by any town shall be even, no person shall vote for more than one-half the number; if the number to be elected be odd, no person shall vote for more than a bare majority of the number.   That number of per-

sons sufficient to fill the offices above mentioned, respectively, who have the highest number of votes shall be elected. In case of a tie, that person whose name stands first or highest on the greatest number of ballots shall be elected." Section 630 of the General Statutes provides: "If the electors of any town, city or borough shall fail to choose a candidate for any office, by reason of an equality of votes at any electors' meeting, and no provision is otherwise made by law for the election of a candidate to such office, such meeting shall stand adjourned for one week at the same hour at which the first meeting was held." The moderator refused to declare either Fitch or McCarty elected under the concluding sentence of § 281, or to declare an adjournment of the meeting for a week for a special election under § 630. This mandamus action was brought by McCarty against the moderator of the town meeting, the town clerk of the town and the two selectmen elected at the town meeting to secure an order that they call a special election to dissolve the tie vote in accordance with the intent and provisions of § 630, and to make proper arrangements for holding that election. The trial court ruled that under the provisions of § 281 Fitch was duly elected selectman and denied the writ. McCarty has appealed.

The proceedings in the case were decidedly informal. The state's attorney on behalf of McCarty made application to the court for a writ of mandamus, and on that application it issued a rule to show cause; the issuance of this rule at that stage of the proceedings, though unusual, was permissible; but thereafter no alternative writ was issued and no return made. Instead, the defendants all filed answers; two of them filed "special defenses" asking affirmative relief; and one of them filed an answer and counterpetition also seeking such relief. The procedure in mandamus is

definitely fixed by our decisions and should be followed. *State ex rel. Standard Oil Co.* v. *New Britain,* 111 Conn. 214, 217, 149 Atl. 677; *In the Matter of Gilhuly's Petition,* 124 Conn. 271, 282, 199 Atl. 436; *State ex rel. Hansen* v. *Schall,* 126 Conn. 536, 538, 12 Atl. (2d) 767. The plaintiff moved to "strike from the docket" the special defenses and the counterpetition. The trial court ruled that it could not, in a proceeding of this nature, grant the relief asked in these pleadings, but also that it could not grant the motions. The latter ruling clearly was because they were not proper motions to accomplish the purpose the plaintiff had in mind. Practice Book, § 61. The trial court did find that the defendant Fitch had been elected; but this was merely as incident to its denial of relief to the plaintiff, and it granted no relief to the defendants upon these pleadings. Even if the informality in the motions be overlooked, the plaintiff was not harmed by the ruling.

There is no dispute as to the facts decisive of the case and no need to consider the defendants' attack on the finding. The ballot labels placed on the voting machines used in the election, on which were printed the names of candidates, extended horizontally across the front of the machines; only two parties had nominated candidates; the upper label was that of the Republican party, and the lower was that of the Democratic party; and as regards the office of selectman the ballot labels read as follows:

|  | 1A | 2A |
|---|---|---|
| Republican party | First Selectman F. Raymond Rochford | Second Selectman William H. Balke |

|  | 1B | 2B |
|---|---|---|
| Democratic party | First Selectman George P. Fitch | Second Selectman Robert P. McCarty |

A straight ticket was voted by pulling the party lever, which turned down to a voting position all of the pointers for candidates of that party, and leaving it in that position until the curtain lever was moved when the voter left the booth. If it was desired to vote a split ticket, the party lever was pulled and the pointer over any name to be "cut" was then turned up and the pointer over the name of the candidate to be voted for was turned down.

Section 738 of the General Statutes, authorizing the use of voting machines, provides: "All provisions of the statutes applicable to elections where voting is done otherwise than by machines, and all penalties prescribed for violation of such provisions, shall apply to elections where voting machines are used, in so far as they are not in conflict with the provisions of this chapter." The basic question is, was the situation before the court within the provisions of § 281. This section was enacted at a time when a separate ballot was printed for each party upon which the names of its nominees were placed one below the other; General Statutes, Rev. 1902, §§ 1632, 1810; and anyone desiring to vote a split ticket could do so by crossing out a name and inserting another by writing or a paster. General Statutes, Rev. 1902, § 1651. It was a simple matter for any person casting such a ballot to make the name of any candidate he wished to vote for stand "first or highest" on the ballot. There is a quite similar provision in the statutes for determining which one of the persons elected selectmen shall hold the position of first selectman, which reads as follows: "Of the persons elected selectmen by any town, the person first named on a plurality of the ballots cast for them or any of them shall be first selectman . . ." General Statutes, § 283. In 1891 we had before us an election contest involving this statute. *Mallett* v. *Plumb,* 60 Conn. 352,

361, 22 Atl. 772. At a town election Mallett was first named on ninety-eight Democratic ballots and Nichols second named on one hundred and five of the ballots of that party; Plumb was first named on one hundred and one Republican ballots and French was second named on eighty-one of the ballots of that party. We recognized that the statute was somewhat ambiguous but construed it to mean that the persons first or highest named on a plurality of the ballots actually cast, not the first named on the party ticket which was most voted, was entitled to the position of first selectman. See also *Beckley* v. *Alling*, 91 Conn. 362, 368, 99 Atl. 1034; *Denny* v. *Pratt*, 104 Conn. 396, 398, 133 Atl. 107. We placed our decision largely upon the fact that to give controlling force to the position of the name on the printed ticket instead of to its position upon the ballots as actually voted might well produce a result which would defeat the will of a majority of the electors, who, by voting a ticket on which the name of a particular person actually stood first, indicated their desire that he occupy the office of first selectman; and that this would run counter to the principle that the will of the majority should control in the choice of public officers.

If we attempt to apply § 281 to an election of selectmen by voting machines, the difficulties are manifest. We have defined the word ballot in a broad sense as "the means by which a voter expresses his choice" and in effect have said that the expression of this choice by the operation of a voting machine may, in this sense, constitute a ballot. *Mansfield* v. *Scully*, 129 Conn. 494, 500, 29 Atl. (2d) 444. There are, however, many provisions in our statutes concerning "ballots" which are wholly inapplicable to the casting of a vote by means of a voting machine, as, for example, the statute concerning the improper marking or folding of ballots.

General Statutes, § 606. In determining whether a provision in the statutes concerning ballots applies to elections by means of voting machines, the problem cannot be solved entirely upon the basis of a definite conflict with the provisions of the law governing the use of those machines, under § 738; if the statute is incapable of reasonable application to such elections or if its application will run counter to the basic principle that a majority vote shall determine the election to an office, the legislature certainly cannot have intended that it be applied to them.

A moment's consideration will show that to be the situation before us. There is no way by which a voter using a voting machine can give effect to his intention as to the person whose name is to stand "first or highest" on his ballot. To paraphrase an illustration found in *Mallett* v. *Plumb,* supra: Suppose that all but one of those voting for Fitch were Republicans who voted for Rochford and Fitch, and all but one of those who voted for McCarty were Democrats who voted for Balke and McCarty; there can be little question that the Republicans voting for Fitch would first turn the Republican party lever and then turn down the pointer over Fitch's name, and presumably most of the Democrats voting for McCarty would first turn the Democratic party lever before turning down the pointer over Balke's name. In such a situation, so far as the intent of the voter is concerned, McCarty would be the first named in a majority of the votes cast as between him and Fitch; and only by doing the very thing which in *Mallett* v. *Plumb,* supra, we said should not be done, that is, by giving controlling weight to the fact that Fitch's name stands first upon the printed ballot label, could Fitch be regarded as the "person whose name stands first or highest on the greatest number of ballots." In an election for town officers where voting

machines are used, it is not reasonably possible, with a due regard to the rights of voters to declare their preference, to apply the provisions of § 281 to determine, as between two candidates for selectman having equal votes, which is to be declared elected. Section 281 was not applicable in the situation before the trial court. It was in error in finding that Fitch was duly elected.

It does not follow, however, that the plaintiff was entitled to a writ ordering a special election in accordance with the intent and provisions of § 630. The fact that the time set by law for the performance of an act has passed often will not preclude a court from directing an officer who has refused or failed to act to fulfill his duty. *State ex rel. Foote* v. *Bartholomew*, 103 Conn. 607, 621, 132 Atl. 30; *Hart* v. *Board of Examiners of Embalmers*, 129 Conn. 128, 135, 26 Atl. (2d) 780. Section 630 of the General Statutes provides that, where there has been a failure to elect a candidate, the meeting automatically stands adjourned for one week, when a special election is to be held. Clearly there is no power in any of the defendants to make effective that statute, and a peremptory writ of mandamus could not issue against them under its provisions. It is not now possible to make effective the mandate of the statute, and the writ of mandamus cannot be invoked to confer a power which does not exist. *Laclede Gas Light Co.* v. *Murphy*, 170 U. S. 78, 95, 18 Sup. Ct. 505; 34 Am. Jur. 852. As there was no election of a third selectman in the town, there is a vacancy in the office. Section 284 of the General Statutes provides that in case any office in any town shall be vacant by the neglect of the town to elect or from any other cause "such town, if such office be elective, may, in legal town meeting, fill the vacancy except as otherwise provided by law; but, until the town shall fill it, such vacancy

may be filled by the selectmen." This statute imposes no duty upon the selectmen to call a special election to fill a vacancy in a town office. They might, indeed, call one, if they deemed it necessary, and a duty to do so would arise "on application of twenty inhabitants qualified to vote in town meetings." General Statutes, § 264. But there is no duty upon them, in the absence of such an application, which is enforceable by mandamus. *In the Matter of Gilhuly's Petition,* supra, 277. While we cannot agree with the trial court in the reasoning upon which it placed its refusal to issue the writ, that decision was correct.

The only error is in the conclusion of the trial court that Fitch was elected, which is embodied in the judgment. This makes it necessary to set the judgment aside.

There is error in part, the judgment is set aside and the case is remanded with direction to render judgment for the defendants in accordance with this opinion.

In this opinion the other judges concurred.