BRUCE MORRIS ET AL. *v.* ROBERT CONGDON ET AL.
(SC 17336)

Sullivan, C. J., and Borden, Norcott, Katz and Zarella, Js.

Argued November 28, 2005—officially released March 28, 2006

*Richard S. Cody*, with whom, on the brief, was *Jon B. Chase*, for the appellant (plaintiff).

*Frank Manfredi*, with whom was *Mark Mandell*, for the appellees (defendants).

*Opinion*

SULLIVAN, C. J. The plaintiff, Bruce Morris, a resident of the town of Preston (town), appeals from the judgment of the Appellate Court, which affirmed the judgment of the trial court rendering summary judgment in favor of the defendants, the board of selectmen of the town (board) and its individual members.[1] We granted certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that

[1] The individuals named as defendants are Robert Congdon, Gerald Grabarek and Thomas Maurer. While this appeal was pending, Maurer died and the remaining defendants successfully petitioned this court to substitute the newly appointed selectman, Merrill Gerber, as defendant. George Kleeman is a plaintiff in this action but is not a participant in this certified appeal.

the defendants were not required to warn a special town meeting in accordance with the plaintiffs' petition for a writ of mandamus?" *Morris* v. *Congdon*, 272 Conn. 913, 866 A.2d 1284 (2005). We reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following relevant facts and procedural history. "The plaintiffs, who are residents of the town . . . submitted an application to the town clerk signed by more than fifty qualified voters. In the application, the plaintiffs called for the board to warn a special town meeting to consider and act upon a motion to eliminate the position of a paid full-time or part-time town planner.[2] The board refused to warn a meeting. The plaintiffs filed an action in the Superior Court seeking a writ of mandamus to compel the board to warn a town meeting pursuant to General Statutes § 7-1 (a).[3] The defendants filed an answer and special defenses, asserting that the subject matter of the proposed meeting was illegal or outside the legislative authority of a town meeting and was an administrative function within the discretion and authority of the [board].

"On July 3, 2002, the plaintiffs filed a motion for summary judgment, with a memorandum of law and

---

[2] The town meeting is a New England institution that is more than three hundred years old. R. Tilden, "Town Government," 38 B.U. L. Rev. 347, 348 (1958). At a duly warned town meeting, the assembled citizens act as the town's legislative body. Id., 349. The town meeting form of government originated in the Massachusetts Bay Colony and was brought to Connecticut by settlers. J. Zimmerman, The New England Town Meeting: Democracy in Action (Praeger Publishers 1999) p.117.

[3] General Statutes § 7-1 (a) provides in relevant part: "Except as otherwise provided by law, there shall be held in each town, annually, a town meeting for the transaction of business proper to come before such meeting, which meeting shall be designated as the annual town meeting. Special town meetings may be convened when the selectmen deem it necessary, and they shall warn a special town meeting on application of twenty inhabitants qualified to vote in town meetings, such meeting to be held within twenty-one days after receiving such application. . . ."

affidavits, on the grounds that no genuine issue of material fact was in dispute and that they had a clear right to the relief they sought in their application. The defendants filed a memorandum of law and affidavits in opposition to the motion. On January 29, 2003, in a written decision, the court denied the plaintiffs' motion, finding, inter alia, that as a matter of law . . . the plaintiffs' [application] was not for a proper purpose and that the defendants were legally justified in refusing to warn the meeting. The defendants then filed a motion for summary judgment on the basis of the court's written decision on the plaintiffs' motion. That motion was granted on March 17, 2003 . . . ." (Internal quotation marks omitted.) *Morris* v. *Congdon*, 85 Conn. App. 555, 556–57, 858 A.2d 279 (2004).

The plaintiffs appealed from the judgment of the trial court to the Appellate Court, which affirmed the judgment. The Appellate Court reasoned that, under § 7-1, the board is not required to warn a special town meeting if the meeting's purpose is improper or illegal. Id., 559. The court then concluded that the meeting's purpose to eliminate the town planner position was improper because the board solely is responsible for hiring and firing town employees. Id., 560–63. On appeal to this court, the plaintiff claims that the purpose of the meeting was not to fire an employee, but rather to eliminate a town position. He claims that, because this purpose was proper, the board was required to warn a special town meeting under § 7-1. We agree with the plaintiff.

At the outset, we set forth the standard of review. "[T]he standard of review of a trial court's decision to grant a motion for summary judgment is well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

(Internal quotation marks omitted.) *Hanks* v. *Powder Ridge Restaurant Corp.*, 276 Conn. 314, 321, 885 A.2d 734 (2005). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 263 Conn. 424, 450, 820 A.2d 258 (2003).

A writ of mandamus is "an extraordinary remedy, available in limited circumstances for limited purposes. . . . It is fundamental that the issuance of the writ rests in the discretion of the court, not an arbitrary discretion exercised as a result of caprice but a sound discretion exercised in accordance with recognized principles of law. . . . That discretion will be exercised in favor of issuing the writ only where the plaintiff has a clear legal right to have done that which he seeks. . . . The writ is proper only when (1) the law imposes on the party against whom the writ would run a duty the performance of which is mandatory and not discretionary; (2) the party applying for the writ has a clear legal right to have the duty performed; and (3) there is no other specific adequate remedy." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Sewer Commission*, 270 Conn. 409, 416–17, 853 A.2d 497 (2004).

"In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Citations omitted; internal quotation marks omitted.) Id., 417. Nevertheless, this court will overturn a lower court's judgment if it has committed a clear error or misconceived the law. See *State* v. *Reid*, 254 Conn. 540, 550, 757 A.2d 482 (2000).

We now turn to the merits of the plaintiff's claim. Pursuant to the Home Rule Act; General Statutes § 7-187 et seq.; towns in Connecticut may adopt municipal charters or home rule ordinances, which constitute the organic law of the town; see General Statutes § 7-188 et seq.;[4] or their powers may be granted by a special act. In the absence of one of those sources of authority, the town's powers are set forth in the General Statutes. See *City Council* v. *Hall*, 180 Conn. 243, 248, 429 A.2d 481 (1980) (municipality's powers include those expressly granted to it by state). The town in the present case does not have a charter or home rule ordinance, and its powers were not granted by a special act. Thus, its powers are delineated by the General Statutes.

General Statutes § 7-1 (a) provides in relevant part that "the selectmen . . . shall warn a special town meeting on application of twenty inhabitants qualified to vote in town meetings . . . ." In an early case interpreting this statute, residents of the city of Meriden asked their board of selectmen to warn a town meeting for the purpose of appointing a town agent. *Lyon* v. *Rice*, 41 Conn. 245, 246 (1874). When the board of selectmen refused to warn the meeting, the residents applied to the trial court for a writ of mandamus, which it denied. Id., 248. The residents then appealed to this court, and we held that, as long as the requested meeting is for "any legitimate and proper purpose," the selectmen must warn the meeting and have no discretion to

---

[4] General Statutes § 7-188 provides in relevant part: "(a) Any municipality, in addition to such powers as it has under the provisions of the general statutes or any special act, shall have the power to (1) adopt and amend a charter which shall be its organic law . . . which charter or amended charter may include the provisions of any special act concerning the municipality but which shall not otherwise be inconsistent with the Constitution or general statutes . . . (2) amend a home rule ordinance which has been adopted prior to October 1, 1982, which revised home rule ordinance shall not be inconsistent with the Constitution or the general statutes . . . ."

refuse. Id.;[5] see also *Cummings* v. *Looney*, 89 Conn. 557, 561, 95 A. 19 (1915) (if meeting is for proper purpose, selectmen may be compelled by mandamus to warn it).

Accordingly, we must determine in the present case whether the proposed town meeting was for a legitimate and proper purpose. The plaintiff claims that the meeting was for a proper purpose because the creation or elimination of a municipal position is within the authority of the town meeting, absent a charter provision, special act, or ordinance that provides otherwise.[6] The defendants respond that the meeting's purpose was improper because: (1) the town meeting does not have

[5] Although this court held that, because the meeting was for a proper purpose, a writ of mandamus was the appropriate remedy, we ultimately affirmed the trial court's judgment for the defendants on other grounds. *Lyon* v. *Rice*, supra, 41 Conn. 249–50.

[6] In his reply brief, the plaintiff also raises two justiciability arguments. First, he claims that the defendants do not have standing to assert the town planner's rights. This claim misapprehends the defendants' argument. The defendants are not asserting the incumbent town planner's right to a job. They are asserting their own right to make personnel decisions.

The plaintiff next argues that the question of whether the town meeting can eliminate the position of town planner is unripe because "the town meeting might simply vote to ratify what the defendants have done in hiring a planner, or it might circumscribe the hiring process in some manner and adopt, for example, legal provisions that the selectmen be prohibited from discriminating in hiring practices."

"[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . [and we therefore] must be satisfied that the case before [us] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Office of the Governor* v. *Select Committee of Inquiry*, 271 Conn. 540, 570, 858 A.2d 709 (2004). "We are not compelled to decide claims of right which are purely hypothetical or are not of consequence as guides to the present conduct of the parties." (Internal quotation marks omitted.) *Esposito* v. *Specyalski*, 268 Conn. 336, 350, 844 A.2d 211 (2004).

The question of whether the town meeting can eliminate the town planner position is not hypothetical because a threshold question in this case is whether the town meeting's stated purpose is proper. See *Cummings* v. *Looney*, supra, 89 Conn. 561. If the purpose is proper, the selectmen must warn the meeting, and the plaintiff is entitled to the requested relief. Id.

authority to eliminate the position of town planner; (2) the real purpose of the meeting was to fire the incumbent town planner, and such personnel decisions traditionally have been made by the board; and (3) removal of the town planner by the town meeting would constitute an unconstitutional bill of attainder. We agree with the plaintiff.

We begin our analysis of this issue with General Statutes § 7-148 (c) (5) (C), which provides in relevant part that "[a]ny municipality shall have the power to . . . [p]rovide for the employment of and prescribe the salaries, compensation and hours of employment of all officers and employees of the municipality and the duties of such officers and employees not expressly defined by the Constitution of the state, the general statutes, charter, or special act . . . ." General Statutes § 7-148 (a) defines " 'municipality' " as "any town, city or borough, consolidated town and city or consolidated town and borough." Thus, although § 7-148 (c) (5) (C) pertains to town employees, it does not specify whether the town meeting or board has authority over town employment matters.[7]

General Statutes § 7-12, which governs the duties of selectmen, provides, however, that the selectmen "shall superintend the concerns of the town . . . ." This court

---

[7] The plaintiff claims that § 7-148 provides the town meeting with sole authority to create and eliminate town positions. We conclude, however, that this statute carves out a town's authority vis-á-vis the state, and does not apportion authority within a municipal government. If § 7-148 was intended to enumerate the powers reserved for a town meeting, it is unlikely that the legislature would have defined " 'municipality' " as "any town, city or borough, consolidated town and city or consolidated town and borough." General Statutes § 7-148 (a). Instead, it is reasonable to conclude that the legislature would have referred to the town meeting by name, as it did in other sections of title 7 of the General Statutes. See, e.g., General Statutes § 7-1; see also *Plourde* v. *Liburdi*, 207 Conn. 412, 416, 540 A.2d 1054 (1988) ("[t]he use of different words [or the absence of repeatedly used words in the context of] the same [subject matter] must indicate a difference in legislative intention" [internal quotation marks omitted]).

has held that "[w]hen a general power is given to a municipal officer, whatever is necessary for effective exercise of that power is, in the absence of express authority, conferred by implication." *Hartford* v. *American Arbitration Assn.*, 174 Conn. 472, 479, 391 A.2d 137 (1978). It is reasonable to conclude that the power to create or eliminate municipal positions is a necessary concomitant to the power to superintend the concerns of the town.

Moreover, in *Buck* v. *Barnes*, 75 Conn. 460, 462, 53 A. 1012 (1903), this court held that "[t]he statutory powers and duties of selectmen are confined to those involved in the general authority given them to order the prudential affairs, or to superintend the concerns of the town, *as defined by custom* . . . ." (Emphasis added.) See also *Pinney* v. *Brown*, 60 Conn. 164, 169, 22 A. 430 (1891) (long usage gives selectmen of towns certain powers). In the present case, the defendants stated in the affidavits attached to their motion for summary judgment that the board customarily has created municipal job positions, and the plaintiff does not dispute this fact. We conclude, therefore, that the board had authority to create or eliminate the town planner position.

The fact that the board had this authority, however, does not lead inexorably to the conclusion that the town meeting lacked authority to eliminate a municipal position that the board would prefer to retain. Although one case, on which the trial court relied, appears to hold that the town meeting does not have authority over municipal staffing decisions; see *State ex rel. McDermott* v. *Wilkinson*, 88 Conn. 300, 303, 307–308, 90 A. 929 (1914); the Appellate Court correctly concluded that case was inapposite because it interpreted a special act vesting the selectmen of the town of Orange with broad, enumerated powers. *Morris* v. *Congdon*, supra, 85 Conn. App. 561.

The defendants have cited no authority for the proposition that, in the absence of an applicable charter provision, ordinance, or special act, there is a strict separation of powers between the board and the town meeting. Indeed, history supports the conclusion that selectmen do not wield powers separate and distinct from those held by the town meeting, but act as agents of the town meeting. The first New England towns were governed by groups of assembled citizens, without the aid of elected officials. J. Zimmerman, The New England Town Meeting: Democracy in Action (Praeger Publishers 1999) pp. 18–19. As these towns grew, it became unwieldy for citizens to vote directly on every minor issue, so the town meetings began appointing officials known as selectmen. Id., p. 21. These selectmen were viewed as agents of the town meetings, which assigned their duties and retained the ultimate power over town affairs. Id., p. 22; see also R. Tilden, "Town Government," 38 B.U. L. Rev. 347, 375 (1958) (describing selectmen as executive committee of town meeting charged with superintending town affairs between town meetings).

Our jurisprudence also supports this proposition. In *Pinney* v. *Brown*, supra, 60 Conn. 169, this court held that "[t]he selectmen of a town are, to be sure, its general prudential officers, and are charged with the duty of superintending the concerns of the town, but in so doing they act as the agents of the town and exercise a delegated authority." See also *Union* v. *Crawford*, 19 Conn. 331, 332 (1848) (describing selectmen as agents of town).

In *Reed* v. *Risley*, 151 Conn. 372, 373–74, 198 A.2d 55 (1964), the town selectmen refused to call a special town meeting for the purpose of accepting certain streets as public highways. The selectmen claimed that the town meeting could not accept the streets because their layout had not been preapproved by the selectmen.

Id., 374. Prior to 1963, General Statutes § 13-25, now codified at General Statutes § 13a-71, provided that "[n]o person, company or corporation, except municipal corporations, shall lay out any street or highway . . . less than fifty feet in width unless with the prior written approval of a majority of the selectmen of the town . . . ." (Internal quotation marks omitted.) *Reed* v. *Risley*, supra, 374 n.1. It also provided that the selectmen had to approve the street's construction. Id. Prior to 1963, General Statutes § 13-3, now codified at General Statutes § 13a-48, provided that "[a]ny municipality . . . may . . . accept as a public highway any street or highway situated in such municipality." (Internal quotation marks omitted.) *Reed* v. *Risley*, supra, 374 n.1.

In a mandamus action against the selectmen, the trial court ordered the selectmen to call the meeting. Id., 373. This court held on appeal that, although the selectmen had authority to approve the layout and construction of private streets to be opened to the public, the town meeting had the authority to accept any street, including a private street, as a public highway, regardless of whether the selectmen first had approved the street. Id., 377 (§ 13-25 provided for approval by selectmen of layout and construction of private roads and contemplated possibility of their becoming public highways, but acceptance of streets as public highways was vested in town meeting under § 13-3). It is clear, therefore, that there is nothing inherently improper about a town meeting and a town's board of selectmen sharing authority over a specific concern of the town. Our decision in *Reed* also bolsters the conclusion that, in the absence of any charter, ordinance, or statute to the contrary, basic policy decisions are within the town meeting's authority while the selectmen have authority over the administration of those decisions. See id.

In light of these authorities, we conclude that, when the town meeting has remained silent, the board, as the

agent of the town meeting, has authority, as a necessary concomitant of its general authority to superintend the concerns of the town, to create or eliminate a municipal position. Because the board exercises that authority as an agent of the town meeting, which has inherent power over town affairs, we also conclude that the town meeting has the primary authority to create or eliminate a municipal position, and the board is bound by the town meeting's exercise of that authority.[8] Accordingly, we conclude that the elimination of the position of town planner was a proper purpose for the town meeting, and, therefore, that the Appellate Court improperly determined that the defendants were not required to warn the meeting requested by the plaintiffs.

The defendants argue, however, that this court has held that boards of selectmen have broad discretion to determine whether the purpose of a town meeting is proper. See *Windham Taxpayers Assn.* v. *Board of Selectmen*, 234 Conn. 513, 528, 662 A.2d 1281 (1995). Therefore, the defendants argue, a writ of mandamus cannot force them to warn a meeting because it cannot be used to compel a discretionary act. We disagree.

In *Windham Taxpayers Assn.*, town residents requested a special town meeting for the purpose of setting the time and place of a townwide referendum to rescind an appropriation of funding for a new school. Id., 515–17. After the selectmen refused to warn the meeting, the residents brought a mandamus action, which the trial court dismissed. Id., 518. This court held on appeal that a writ of mandamus could not issue because the selectmen had discretion to determine whether to call a special town meeting. Id., 528. We stated, however, that the selectmen's discretion ema-

---

[8] Thus, the relationship between the town meeting and the board is more analogous to that between the legislature and a legislative agency than to that between separate branches of government.

nated from Windham's town charter, which vested the legislative power in the board of selectmen. Id., 530. The charter also limited the issues on which the town meeting was authorized to act. Id., 531. Because Preston does not have a town charter, special act, or ordinance granting similar discretion to its selectmen, *Windham Taxpayers Assn.* is inapposite to this case.

The defendants next claim that the meeting's purpose was improper because the plaintiffs' true motivation for filing an application for a special town meeting was to fire the incumbent town planner. In other words, they ask us to scrutinize the plaintiffs' alleged actual purpose instead of their stated purpose to eliminate the position, and hold that, because the board solely is responsible for hiring and firing town employees for existing positions, the meeting's purpose was improper. We disagree with the defendants.

The defendants have not provided, nor have we discovered, any authority for the proposition that a court must inquire into the applicants' subjective motives when determining whether a town meeting is for a legitimate and proper purpose. Rather, the case law suggests the opposite. See *Reed* v. *Risley*, supra, 151 Conn. 373–74 (examining purpose set forth in application for special town meeting); *Cummings* v. *Looney*, supra, 89 Conn. 561–62 (same); *Lyon* v. *Rice*, supra, 41 Conn. 246–50 (same); see also *Peck* v. *Booth*, 42 Conn. 271, 274–75 (1875) (although this court later speculated as to applicants' subjective motives for requesting town meeting, we first held that *stated* purpose, to repeal West Haven's town charter, was improper).

Moreover, in *State ex rel. Rylands* v. *Pinkerman*, 63 Conn. 176, 194–95, 28 A. 110 (1893), the former chief of police of the city of Bridgeport alleged that the city's common council had passed an ordinance eliminating his position in order to remove him from office. This

court concluded that "we are not to presume an improper motive. If the ordinance can be supported as a legitimate exercise by the common council of its authority . . . it is our duty to give it such a construction as will make it operative and consistent with [Bridgeport's] charter." Id., 195. Likewise, in the present case, it is inappropriate for us to presume an improper purpose. Accordingly, we will examine only the purpose set forth in the plaintiffs' application, which we already have concluded was proper.

The defendants finally claim that the meeting was for an improper purpose because removal of the town planner by the town meeting would constitute a bill of attainder in violation of article one, § 9, of the United States constitution. We disagree.

Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial . . . ." *United States* v. *Lovett*, 328 U.S. 303, 315, 66 S. Ct. 1073, 90 L. Ed. 1252 (1946). Contrary to the defendants' claim, the legislation proposed by the plaintiffs in their application for a special town meeting was not directed at punishing a named individual, but at eliminating entirely a municipal position. The plaintiffs did not seek to exclude a particular person or group of persons from the town planner job; instead, they proposed legislation that would exclude *everyone* from the job by abolishing it. A piece of legislation is not a bill of attainder by virtue of the fact that it burdens a particular individual more than others, even if it was passed with that particular individual in mind. See *Nixon* v. *Administrator of General Services*, 433 U.S. 425, 471–72, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) (act preventing destruction of records was not bill of attainder because, although it applied specifically to plaintiff and was passed with plaintiff in mind, it also

applied to records of future presidents and other federal officials); see also *Benjamin* v. *Bailey*, 234 Conn. 455, 482, 662 A.2d 1226 (1995) (bill prohibiting sales of firearms made by named manufacturer was not bill of attainder directed at that company because ban prohibited everyone from possessing or selling those weapons). Accordingly, we conclude that the proposed legislation was not an unconstitutional bill of attainder.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to render judgment issuing a writ of mandamus compelling the defendants to warn a special town meeting.

In this opinion the other justices concurred.